OLSEN *et al. v.* NOBLE *et al.; et vice versa.*
OLSEN *et al. v.* PATTERSON *et al.; et vice versa.*

Nos. 18200, 18201, 18207, 18208. ARGUED MAY 13, 1953—DECIDED JUNE 10, 1953—REHEARING DENIED JULY 15, 1953.

*Heyman & Abram, John I. Hynds* and *M. S. Stow,* for plaintiffs in error.

*Haas, Hurt & Peek, J. Corbett Peek Jr.,* and *Mitchell & Mitchell,* contra.

ALMAND, Justice. Fred W. Patterson and Mrs. Claud Patterson Noble, as tenants in common of a lot of land located at the corner of West Peachtree and Simpson Streets in the City of Atlanta, simultaneously instituted separate actions against Otto A. Olsen and Mrs. Signa Olsen, who were the owners of the property just south of the Patterson-Noble property, on which was located an apartment hotel, and against H. A. Stow, a tenant of the Olsens, wherein the plaintiffs sought to enjoin the defendants from trespassing on their property, and to restrain the Olsens from prosecuting two pending actions in the Fulton Court of Ordinary, whereby they sought to require the plaintiffs to remove an obstruction from an alleged private way concededly being on the property of the plaintiffs. The Olsens filed their answers and cross-actions in both cases, in which they contended that they had a prescriptive easement over a private way approximately 11 feet in width, just north of their boundary line, which ran the whole length of their lot, from West Peachtree Street to an alley in the rear of the properties of the plaintiffs and defendants, by reason of more than seven years' continuous adverse use, with repairs, by them and their predecessors in title. They prayed for a decree declaring that they had acquired an easement in such way by prescription across the land of the plaintiffs. Certain demurrers filed by the plaintiffs to the answers and cross-bills were overruled, and exceptions pendente lite were separately filed. The two cases were tried jointly before a jury, and at the conclusion of the evidence the judge directed a verdict in favor of the plaintiffs in both cases, and decrees were entered. The defendants filed separate motions for new trial on the general grounds, and by amendment they complain that the court erred in directing verdicts for the plaintiffs, and that there was sufficient evidence to submit the case to the jury. These motions being overruled, the defendants filed their bills of exceptions in both cases to this court, and the plaintiffs

filed cross-bills assigning error on their exceptions pendente lite.

These cases were argued as one case, and since the essential facts and respective contentions, in the main and cross-bills, are the same, and the evidence is the same, and the controlling questions of law are identical, they will be treated and decided as one case.

■ The main and controlling question is, was there sufficient evidence to authorize the jury to find that the predecessors in title of the defendant Olsens had adversely used, for more than one year and three months, the strip of land on the property of the plaintiffs as a private way, which adverse use the Olsens were entitled to tack on to the period of five years and nine months that they had adversely used the alleged private way? The facts in regard to this issue are: The property owned by the plaintiffs fronts 100 feet on West Peachtree Street and runs back westerly 120 feet to an alley, Simpson Street being on the north of the property of the plaintiffs. For many years the plaintiffs have leased this property, which was used as a used car lot and has a small office on it. The defendants own and operate an apartment hotel on their lot, and part of the north wall of this building is constructed flush with the property of the plaintiffs. The strip of land of the plaintiffs in which the defendants claim an easement is approximately 11 feet in width, running from West Peachtree to a 10-foot alley. The evidence shows that there is an entrance to the Olsen property on West Peachtree Street, and to the rear of their building is a vacant lot with an entrance to the building from this lot, and that egress and ingress could be had by automobiles to the rear of the hotel property by way of Simpson Street and the 10-foot alley. The Olsens acquired possession of their property in November, 1943, by a warranty deed from the Massachusetts Mutual Life Insurance Company executed in July, 1943. There is no evidence which shows that in this conveyance any reference was made to the alleged private way, or to any rights conveyed in the land as to the use of this 11-foot strip. The Olsens have been in continuous possession of the property described in their deed since November, 1943. The insurance company acquired this property by deed under foreclosure in 1934, the hotel property at that time being occupied by Mrs. Maude E. Graham as a tenant or

lessee of the owners, P. C. McDuffie and Municipal Investment Company, who owned it from 1923 to 1934. Mrs. Graham continued as a tenant until the time the Olsens bought the property and went into possession. The Olsens claim that, at the time they went into possession of the property in November, 1943, the 11-foot strip was being used, and had been used for more than three years, as a passageway by the occupants of the hotel, servants, and the public, by entering the property from West Peachtree Street by a recess door on the north side of the building adjacent to the plaintiffs' property, and also by entering from the alley in the rear of the hotel; that the service meters were on the north side of the building; and that the claimed alley was used by persons in reading the meters and making repairs to the building. The contention is that, though the Olsens themselves did not use the alley for a sufficient length of time to acquire a prescriptive easement, Mrs. Graham, while a tenant of the insurance company, did openly and continuously use the alleged way adversely for more than three years, and that this period of occupancy inured to the benefit of the owner of the hotel property; and when such period was added to the time it was used by the Olsens, the evidence was sufficient to authorize the jury to find that there had been more than seven years' adverse use of the property, and that the Olsens had a prescriptive easement to this way. Mrs. Graham testified that, during the time she occupied the hotel property as a tenant of the insurance company, the strip of land was used in the same manner as testified to by the Olsens. She occupied the premises under written leases from the insurance company. Two of these leases were introduced in evidence, dated respectively June 3, 1940, and June 18, 1942. Both of these leases described the leased property as being a "certain building, designated as 302, 304 and 306 West Peachtree Street and known as the Graham Hotel . . with the appurtenances to be used for commercial hotel." There are no references whatever in these leases as to the use of the property just north of the hotel line. P.C. McDuffie, who was the owner of the hotel property at the time it was first leased to Mrs. Graham, testified: that during the entire time he and his corporation, Municipal Investment Company, owned the property, there was no alley or passageway on the property imme-

diately north of the hotel property which is now owned by the Olsens; that, at the time he leased the property to Mrs. Graham, he did not represent to her any right to use the property of the Pattersons as a way, and never authorized her to use that property, nor claimed any right to use it.

James T. Burns, for the plaintiffs, testified that, from the time the property was acquired in July, 1934, by the insurance company until it was sold to the Olsens in 1943, he was in charge of the properties of the company, and when the lease was made to Mrs. Graham in 1934, the company did not lease anything other than the property described in the lease, and at that time the company did not claim any right or title to any property not described in the deed of 1934 to the company, and from the time they acquired the property until the sale to the Olsens in 1943, the company did not claim any right to any property other than that described in that deed. He further testified: "The Massachusetts Mutual Life Insurance Company did not at any time during that period claim any rights of way or pathways or the right to any alley running along and north of the northern boundary of this property on which this hotel was located. Mrs. Graham was in possession when we took over under the mortgage, she was the tenant." He also testified that, at the time the Olsens were negotiating for the purchase of this property, no representations were made as to the alleged walkway or alleyway on the Patterson property, nor did the Olsens make any inquiry as to any such right to use the same. The negotiations for this sale were handled by John M. Richardson, a real-estate salesman. He testified: that, at the time the negotiations were in progress, the Olsens did not make any inquiry about any alleged alley or private way along the property from West Peachtree Street to the 10-foot alley; that no such alley was shown on the plat of the property; and that no one of the insurance company represented to them that the company was claiming any rights to any property other than that described in the deed. The sales contract for the purchase of the property by the Olsens from the insurance company, dated June 3, 1943, contained a description of the hotel property, and contained no statement that the north line of the property was bounded by an alley or private way, but was entirely silent as to such matter. L. K. Clinton

testified: that he was district engineer of the insurance company; that, during the period when the company owned the hotel property, he looked after the repairs and maintenance of the same, and was frequently on the premises; and that, during this period, as an employee and agent of the company, he did not make any claim to any right to use any part of the property of the plaintiffs, did not use the same or claim any right to use it as a walkway or passageway, and did not authorize any of the tenants or employees of the company to use the same.

Counsel for the Olsens contend that a jury issue was created as to the adverse use of the area here involved for more than three years by the Olsens' predecessor in title. The grounds of this contention are: (1) that the jury were entitled to find that the Graham use of the way was under the express and implied terms of her lease; (2) the adverse use of the land by Mrs. Graham inured to the benefit of the insurance company, the then owner of the premises; and (3) such use having inured to the benefit of the insurance company, said period of adverse use could properly be tacked to that of the Olsens to make the required seven years' prescriptive period.

A private right of way over another's land may arise from express grant, or from prescription by seven years' uninterrupted use through improved land. Code, § 85-1401. Prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by law. Such possession to be the foundation of a prescription must be in the right of the possessor, and not of another, and must be public, continuous, exclusive, uninterrupted, and peaceable, and be "accompanied by a claim of right." Code, §§ 85-401, 85-402. "Adverse possession is usually a mixed question of law and fact—whether the facts exist which constitute adverse possession, is for the jury to judge. Whether, assuming the facts proven to be true, they constitute adverse possession, is for the court to decide." *Thompson* v. *Fouts,* 203 *Ga.* 522 (2) (47 S. E. 2d, 571). An inchoate prescriptive title may be transferred by the possessor to a successor, so that the successive possessions may be tacked to make out the prescription. Code, § 85-416. For the Olsens to tack on to the period of their possession the time that the property was used by Mrs. Graham as tenant of the owner, the

burden is upon them to show by a preponderance of the evidence that this prior possession was of such character as to be the foundation of prescription, and be adverse. The foundation must meet all the requirements of Code § 85-402, and among these requirements, the possession must be accompanied by a claim of right. "While this does not mean that the possession must be accompanied by a claim of title out of some predecessor, it does mean that there must be some claim of title in the sense that the possessor claims the property as his own." *Ewing* v. *Tanner*, 184 *Ga.* 773, 780 (193 S. E. 243). In other words, the Olsens' claim of prescriptive title is dependent upon whether or not their predecessor in title, the insurance company, was adversely using the property under a claim of right, there being no privity of title between Mrs. Graham, the tenant, and the Olsens.

"A way appurtenant can not be created without a dominant as well as a servient estate. . . An easement appurtenant can not exist without a dominant tenement. . . It is necessary for unity of title in the same person to both the dominant estate and the easement claimed." 1 Thompson on Real Property (Perm. ed.), 515, 516, § 323. A tenant cannot originate adverse user in his landlord's favor where the lease does not expressly or impliedly include the easement. Holmes *v*. Turner's Falls Lumber Co., 150 Mass. 535 (23 N. E. 305, 6 L. R. A. 283). Use by the tenant inures to the landlord's benefit if it expressly or impliedly includes the easement. Deregibus *v*. Silberman Furniture Co., 121 Conn. 633 (186 Atl. 553, 105 A. L. R. 1183). "A prescription in a *que estate* must always be laid in the person who is seized in a fee simple." Perley *v*. Hilton, 55 N. H. 444, 447; 2 Black Com. 265. Where the landlord never had possession of the land or claimed title to it, and did not include it in the lease, the possession of the tenant beyond the boundaries of the land contained in the lease is not the possession of the landlord, even though the tenant believes he is occupying only the land demised. Perley *v*. Hilton, supra. "An independent adverse occupation by a tenant of another's land, not purporting to be covered by the terms of the lease, and not based upon any authorization purporting to be conferred therein by the lessor, does not inure to the benefit of the landlord." Abatiell *v*. Morse, 115 Vt. 254, 259 (56 Atl. 2d, 464 (5); Bell *v*. Bomes, 78 R. I. 37

(78 Atl. 2d, 362). The adverse possession of an adjoining strip by successive tenants, not expressly or impliedly authorized by the landlord, who was never in possession, is not sufficient to give the landlord title to the adjoining strip. Elwell *v.* Barbrick, 279 Mass. 272 (181 N. E. 184 (3)); Holmes *v.* Johnson, 324 Mass. 450 (86 N. E. 2d, 924 (2)). Inchoate prescriptive rights to an easement do not pass by a deed unless specifically mentioned. "The word 'appurtenances' in a deed only carries easements already existing, and appurtenant to the estate granted. It will not, therefore, include an inchoate prescriptive right over the land of another. In order to convey such a right, it must be specifically described in the deed." Washburn, Easements and Servitudes (4th ed.), p. 59. The word "appurtenants" in a deed, where none are specified, will not be construed to convey anything except what was legally appurtenant to the lands in the hands of the grantor. It does not convey an easement in the land of another which has not ripened into a legal right and has not become attached to the premises conveyed, unless accompanied by proper words describing it and showing the intention of the grantor to pass it. Swazey *v.* Brooks, 34 Vt. 451; Tabor *v.* Bradley, 18 N. Y. 109.

Taking the evidence most favorably to the defendants, it shows that Mrs. Graham, the tenant of the insurance company, the immediate predecessor in title to the Olsens, did use the property in such a manner as to be considered an adverse use as against the plaintiffs, but it does not show that the claim which she was making to the property was the claim of the owner. On the trial, the evidence shows that the owners during this period made no claim of a right to the use of the property, but expressly denied any claim of benefit by reason of the use of Mrs. Graham. Though the leases to Mrs. Graham contain the word "appurtenants," there is no evidence that at the time these leases were made the insurance company had acquired any prescriptive easement over this strip adjoining the hotel property, but that the property leased was only the hotel property. At the time the Olsens received their deed from the insurance company, no representation was made as to this alleged way. No express representation was made in the deed to the Olsens, nor can it be said that the insurance company impliedly conveyed a prescrip-

tive right to which they had never made any claim, but on the contrary stated that they had never used it nor made any claim of a right to use it. So we see from the evidence that one of the essential elements of prescription is lacking, and that is, the possession of the insurance company through its tenant was not accompanied by any claim of right on its part as the owner, the burden being upon the defendants in this regard. The evidence being insufficient in this regard, and it being essential to the defendants' recovery, it follows that it was not error for the court to direct a verdict, on the Olsens' cross-petition, in the plaintiffs' favor.

We have examined the several cases relied upon by the Olsens, and an examination of each of them shows facts upon which use by the tenant was held sufficient to be considered as use by the landlord, and did not involve cases where the landlord, the predecessor in title, expressly never made any use himself of the property, nor ever claimed any right to the use of the adjoining property. Jacobs *v.* Brewster, 354 Mo. 729 (190 S. W. 2d, 894), involved mutual use of a joint driveway which had been used by the owner and his tenants. Weigand *v.* American Stores Co., 346 Pa. 253 (29 Atl. 2d, 484), involved the claim of one tenant to use a driveway to the exclusion of another tenant of the same landlord, and did not involve a claim of a prescriptive easement. Menzner *v.* Tracy, 247 Wis. 245 (19 N. W. 2d, 257), involved acquiescence in a property line, and evidence that the landlord had acquiesced in the tenant's use and possession. In Murray *v.* Fuller (Cal. App.), 186 Pac. 2d, 157, the alley or driveway had been used as a way of necessity for egress and ingress by tenants of the owner, and was used by the landlord. The way consisted of a well-settled driveway which the landlord and tenants had used in driving and parking cars. Deregibus *v.* Silberman Furniture Co., 124 Conn. 39 (197 Atl. 760), involved the second appearance of the same case. On review of the first trial in 121 Conn. 633 (186 Atl. 553), the court held that, unless the property of which the tenant is in adverse possession is within either the express or implied terms of the lease, such possession cannot inure to the benefit of the landlord. On the reappearance of the case, additional evidence was introduced, which was sufficient to support the jury's verdict that the landlord not only

knew of the adverse use by the tenant, but that he claimed the benefit of the use of the easement at the time the landlord conveyed the property.

The evidence being without dispute as to the defendants' use of the plaintiffs' property, it was not error for the court to direct a finding that the plaintiffs were entitled to a permanent injunction versus the defendants, and to enter a decree thereon.

Having held that the verdicts were properly directed in favor of the plaintiffs—it is unnecessary to pass upon the cross-bills of exceptions, and they will be dismissed.

*Judgments on the main bills of exceptions affirmed; cross-bills dismissed. All the Justices concur, except Atkinson, P. J., not participating.*