DOMENICK DIPASCO, GERTRUDE NISSEN, THEODORE P. LEONTSINIS and OLGA LEONTSINIS, his wife, ALFINO DIPASCO and ADELINA DI-PASCO, his wife, JOE ROSSOMANNO and ALADINO DISALVO, and NICK C. STABILE and NORMA M. STABILE, his wife, Respondents, v. OLAN W. PROSSER and MILDRED M. PROSSER, his wife, Appellants, No. 44106—274 S. W. (2d) 279.

Division Two, December 13, 1954.

Motion for Rehearing or to Transfer to Banc and Motion for Rehearing or to Remand Cause Overruled, January 10, 1955.

1194

*Tenney & Dahman* and *Robert L. Smith* for appellants.

*Shifrin, Shifrin & Agatstein* for respondents.

BOHLING, C.—In this suit, filed June 25, 1952, the owners of five city lots near the western boundary of the city of St. Louis seek to have adjudged and decreed a private right of way easement over defendants' land; the right, title and interest of the parties in said land; and to enjoin defendants from interfering with plaintiffs' user of said right of way. The court adjudged defendants to be the owners of said land, subject, however, to a right of way easement in plaintiffs, appurtenant to their respective lots, of 30 feet, more or less, in width, and 204 feet, more or less, in length over defendants' land immediately south of said lots of plaintiffs, and enjoined defendants' threatened obstruction of said easement. Defendants have appealed.

Plaintiffs claim an easement immediately south of and appurtenant to their several lots of a way to and from the street to the west. The lots are bounded by Clayton avenue on the north and San Jacinto avenue, a 25-foot street, on the west, and are approximately 143 feet west of Louisville avenue, the street to the east. San Jacinto avenue was known and referred to by the witnesses as Wise avenue. We so designate it herein.

The plaintiffs hold under warranty deeds. Plaintiffs Nick C. and Norma M. Stabile, husband and wife, acquired title to 6534-36 Clayton avenue September 5, 1947. Plaintiff Domenick DiPasco acquired title to 6530-32 Clayton avenue August 27, 1935. Michele DiSalvo and Concettina DiSalvo, husband and wife, and plaintiffs Alfino and Adelina DiPasco, husband and wife, acquired title to

6526-28 Clayton avenue October 18, 1929. Plaintiffs Aladino DiSalvo and Joe Rossomanno are the son and son-in-law, respectively, of the DiSalvos and, we understand, acquired their interest in 6526-28 Clayton avenue in October, 1951. Plaintiff Gertrude Nissen acquired title to 6520-22 Clayton avenue June 16, 1947. Plaintiffs Theodore P. and Olga Leontsinis, husband and wife, acquired title to 6516-18 Clayton avenue October 3, 1941. These lots front north on Clayton avenue, extend southwardly 125 feet and, for practical purposes here, are 42 feet in width. The lot owned by Mr. and Mrs. Stabile, 6534-36 Clayton avenue, abuts on Wise avenue and the other lots lie successively to the east.

Olan W. and Mildred M. Prosser, husband and wife, defendants, purchased the land immediately south of plaintiffs' lots; the main body of defendants' land being roughly 219 feet east and west by 65 to 85 feet north and south, with, on the north, a strip extending eastwardly. It formed the northern boundary of a larger tract of open, unfenced, vacant, idle and dormant land on which grass, weeds and sunflowers grew, some attaining a height of 12 to 14 feet. About 1949 improvements were commenced on the land just south of defendants' land by the construction of a number of duplexes. Defendants lived in one of the duplexes. They received a quitclaim deed to their land on September 12, 1951.

The Glick Real Estate Company became the owner of plaintiffs' lots and defendants' land (and additional land) on August 18, 1925, taking title in the name of their straw, Etta Marcus, under a warranty deed. The Glick Real Estate Company constructed 4-family flats on each of the five lots, as well as on other lots, in 1926. Each lot has a 4-car garage, except 6530-32 Clayton avenue, where there never has been a garage.

Felix E. Bonzon testified that his mother purchased 6520-22 Clayton avenue from the Glick Real Estate Company in 1926; that prior to the completion of the 4-family flat the Glick people asked his mother if she wanted a garage on the property and she agreed; that the Glick Real Estate Company constructed a 4-car garage as original equipment on the lot, and she paid an additional $1,000 for the garage; and that the garages at 6526-28 and 6534-36 Clayton were also constructed in connection with the construction of the 4-family flats on said lots. There was other corroborating evidence to like effect. The garage at 6516-18 Clayton was constructed sometime between 1939 and 1941. Each garage is a 4-car garage of brick construction on three sides and frame construction on the south or rear side. Each garage has its south wall on the south lot line. The double doors of the stalls open to the south and when open extend beyond the property line of the respective lots. The concrete floor level of the garage at 6520-22 is 18 to 20 inches below the ground level to the north, and a somewhat similar condition may prevail in connection with the garages at 6526-28 and 6534-36.

It appears that no predecessor in title of any plaintiff moved onto his property at the time of purchase and continued the uninterrupted user of the drive for a period of ten years, and whether the Glick Real Estate Company rented any of the 4-family flats to tenants prior to a sale is not disclosed of record. For instance and illustrative: The DiPascos and DiSalvos, who purchased in 1929, moved onto 6526-28 Clayton avenue in 1933 or 1934. Albert W. Berglund, one of their tenants, has resided there since 1931. He purchased an automobile in 1939 and used a stall in the garage until Alfino DiPasco's son Domenick (who purchased 6530-32 where there is no garage) purchased an automobile in 1947 and rented the stall, when Berglund rented a stall at 6520-22. Aladino DiSalvo purchased an automobile in 1943 and has since used one of the stalls at 6526-28. The mother of Felix E. Bonzon, who purchased 6520-22 Clayton in 1926, also rented the flats but moved into one of them in 1928 or 1929. Felix purchased the property from his mother in 1939 and moved into one of the flats. He had an automobile and he, for seven or eight years, and his tenants used the stalls in the garage and driveway until 1947, when he sold the property. Gertrude Nissen, who had, we understand, no automobile, purchased the property and moved into one of the flats, renting three of the stalls in the garage to her tenants.

There is no evidence of record of any written leases and it is presumed that the tenants occupied the flats on a month to month basis. The testimony is that tenants of the 4-family flats who had automobiles originated the driving over the strip of ground immediately south of the garages in going to and from Wise avenue by 1929 and prior thereto. They, the tenants, would throw ashes from the furnaces and leftover gravel from a little concrete work done at one time or another on the strip to improve it. The driveway extended eastwardly from Wise avenue to the garage at 6516-18 Clayton avenue. It did not extend through to Louisville avenue on the east. The strip was used by others: Employees of the electric, the telephone, and the gas companies, the ash man, truckers, and pedestrians. Children going to and from school used it, and people would walk over and across the land owned by defendants.

South of this strip, empty cans, broken glass, ashes and other rubbish had been thrown on the vacant land purchased by the defendants.

On the issue of an easement by prescription defendants contend (a) that the user of the driveway was by the tenants of the owners and that tenants cannot originate an easement by prescription for their landlord by unauthorized trespasses upon land of a stranger; and (b) that defendants' land was vacant and uninclosed land; that a user by others of such land gives rise to a presumption that the user is permissive, and that such presumption of permissive user was not overcome by plaintiffs.

Plaintiffs' position with respect to point (a) above is that, irrespective of what the law may be in other states, defendants' contention is not the law of Missouri; and with respect to point (b) above plaintiffs' position is that, while the use of unimproved land by one other than the owner is ordinarily presumed to be permissive, such presumption may be overcome by one who claims adverse possession, and the owner must then establish that the use was permissive; and that in the instant case such presumption has been overcome.

■ The following cases are to the effect tenants cannot originate by prescription an easement appurtenant to the land of their landlord by unauthorized trespasses upon the lands of a stranger. Abatiell v. Morse, 115 Vt. 254, 56 A. 2d 464, 466[2-5], citing Schofield v. Harrison L. & M. Co., Mo., 187 S. W. 61, 64[8]; Olsen v. Noble, 209 Ga. 899, 76 S. E. 2d 775, 780[6-10], reviewing authorities and here referred to; Deregibus v. Silberman Furniture Co., 121 Conn. 633, 186 A. 553, 105 A. L. R. 1183, 1186; Perley v. Hilton, 55 N. H. 444, 447; Capps v. Merrifield, 227 Mich. 194, 198 N. W. 918; Coggins v. Shilling, 30 N. J. Super. 26, 103 A. 2d 171, 173; 28 C. J. S. 643, § 8; 1 Thompson, Real Property (1939), 515, § 323; 4 Tiffany, Real Property, 3d Ed., 550, § 1193; 2 Blk. Com. 265.

■ Plaintiffs say defendants' position has been ruled contra in Jacobs v. Brewster, 354 Mo. 729, 190 S. W. 2d 894, 898[7], and Smith v. Santarelli, Mo. App., 207 S. W. 2d 543, 545[2, 3]. We think these cases are distinguishable from plaintiffs' authorities. In the Jacobs case (190 S. W. 2d l.c. 895, 899, 900), the then owners of the adjoining improved and occupied lots constructed a joint driveway and a joint garage, each contributing one-half of the expense and space along the lot line, and each owner proceeded to make use of the joint drive and garage. This distinguishing feature received recognition in Foxx v. Thompson, 358 Mo. 610, 216 S. W. 2d 87, 91. See comment on the Jacobs case in Olsen v. Noble, 209 Ga. 899, 76 S. E. 2d 775, 781. In the Smith case, supra l.c. 544, it appears that Mr. Kephart, who owned the dominant estate from 1913 until 1927, originated and consummated a right of way easement by prescription long prior to the purchase of either property by the litigants.

Capps v. Merrifield, supra, states the distinction: "If the tenant possesses land as tenant, his possession inures to the benefit of the landlord. But if he occupies it, not under the lease, but as a trespasser upon the land of a stranger, the trespass is his, and the penalties and compensations, if any, of the trespass are his also. We think of no principle by which the landlord might be held liable for such unauthorized trespass of his tenant, and none by which he may claim benefit because of it."

■ From our study of the record we think plaintiffs' easement rests on an implied grant, founded in intention and equitable estoppel;

embracing perhaps an intended dedication of public user, not an issue here.

Plaintiffs derived their titles through warranty deeds, describing the property by metes and bounds, from Etta Marcus, a straw party for the Glick Real Estate Company. Defendant Olan W. Prosser negotiated with and paid the Glick Real Estate Company for defendants' land, and on September 12, 1951, received a quitclaim deed to the property from the Glick Real Estate Company's straw party, Etta M. Weber, formerly Etta Marcus. Defendants were not purchasers without notice. They stand in the shoes of their grantor. The quitclaim deed did not convey the property itself but only the interest or estate therein of the grantor, subject to outstanding encumbrances and equities against the grantor not required to be recorded. Schaeffer v. Moore, Mo., 262 S. W. 2d 854, 858[6, 9, 10], citing authority; Shelton v. Horrell, 232 Mo. 358, 378(IV), 389, 134 S. W. 988, 992(4), 137 S. W. 264, 267.

Here the owner conveyed the quasi-dominant estate prior to the conveyance of the quasi-servient estate. The grant to plaintiffs' predecessors in title is taken most favorably to the grantee. We are not concerned with an implied reservation in favor of a grantor in derogation of his own grant. There is no occasion for inquiry into any distinctions between implied grants of apparent and continuous quasi-easements and easements of a way of necessity. We do not have an innocent purchaser for value, holding under a warranty deed. We think cases involving improved and occupied real estate and holding the claimed easement not reasonably necessary are distinguishable on their facts. Bussmeyer v. Jablonsky, 241 Mo. 681, 693, 703, 145 S. W. 772, 775, 779, 39 L. R. A. (NS) 549, Ann. Cas. 1913C, 1104; Jablonsky v. Wussler, 262 Mo. 320, 171 S. W. 641; Missouri State Oil Co. v. Fuse, 360 Mo. 1022, 232 S. W. 2d 501, 506; Schnider v. M. E. H. Realty Inv. Co., 239 Mo. App. 546, 193 S. W. 2d 69, citing authority.

At the time of the construction work in 1926 by the Glick Real Estate Company there existed a unity of ownership and, with the title in a straw party, a unity of title of the lands involved. Giving consideration to the circumstances attending the construction of the garages, the location of their south walls on the south lot lines with the double doors of the stalls, the only opening for automobiles, opening to the south onto the vacant land retained by the owner, it is plainly evident that the Glick Real Estate Company actually intended to and considered it reasonably necessary ▮ that a way be established over its vacant land immediately south of the lots for passage to and from Wise avenue for the lot owners, their tenants and, seemingly, the general public; and that the sale to and purchase by the predecessors in title of the respective plaintiffs of the lots were had with knowledge of such intention and with an implied

right of user, although no mention of an easement was made in the several deeds. This was apparent from the acts of the owner at and prior to the severance of the unity of title and ownership. The right of user existed in the occupants of the 4-family flats, whether owners or tenants, and was a right connected with the purchase of the lots from the owner. Foxx v. Thompson, 358 Mo. 610, 216 S. W. 2d 87, 90; Greisinger v. Klinhardt, 321 Mo. 186, 9 S. W. 2d 978, 980; Missouri State Oil Co. v. Fuse, supra; Fitzpatrick v. Mik, 24 Mo. App. 435, 437; Hall v. Morton, 125 Mo. App. 315, 323, 102 S. W. 570, 572; 28 C. J. S. 687, §§ 31, 33, b, 41; 17 Am. Jur. 945, §§ 33, 43, 44, 74; 1 Thompson, Real Property (1939), 630, §§ 390, 405, 409; 3 Tiffany, Real Property, 3d Ed., 253, §§ 779, 780. The garages and driveway of the instant case were open and visible and known to defendants when they purchased. In the circumstances disclosed of record the law of equitable estoppel would prevent the Glick Real Estate Company from successfully denying that the vacant land immediately south of plaintiffs' respective lots was subject to a right of way easement to and from Wise avenue. Said grantor's quitclaim deed vested no greater right in defendants.

The remaining contested issue is the width of the easement, Defendants contend that a width of 30 feet is needlessly damaging to defendants and not reasonably necessary to plaintiffs' enjoyment of the easement. Naturally the dimensions of the easement would be such as are reasonably necessary to accomplish its purposes. Plaintiffs and their witnesses referred to the way as an "alley." The intent to establish an alley must have existed in 1926 when the unity of title and ownership was severed; and it is reasonable that the servient owner retained all rights consistent with such an easement. The width of Wise avenue is 25 feet and the evidence warranted a finding that public alleys in the locality are 15 feet wide. In Meryl Realty & Inv. Co. v. Schumacher, Mo., 264 S. W. 368, a case stressed by plaintiffs, the easement acquired by prescription for alley purposes was 10 feet wide. Defendants say, if plaintiffs have an easement, a width of 15 feet would accommodate all reasonable uses for the purposes of the easement. We think the evidence sustains that conclusion. Davis v. Watson, 89 Mo. App. 15, 30; 28 C. J. S. 758, § 77b, c; 17 Am. Jur. 1001; § 105; 1 Thompson, Real Property (1939), 738, § 451. See Burroughs v. Milligan, 199 Md. 78, 85 A. 2d 775, 28 A. L. R. 2d 243, Anno., 253.

Plaintiffs say the evidence established a 30-foot width for 204 feet. Domenick DiPasco testified that about a week prior to trial he measured the "hard surface" back of the garages, and that where they back out of the garages the width is 30 feet but back of his property where there was no garage the width was probably only 20 feet. There was other testimony to like effect, but plaintiffs stress DiPasco's testimony above. It does not establish a width of 30 feet for 204 feet. It is obvious that the "adding of ashes" to improve the way was a gradu-

al process. Plaintiffs do not direct our attention to testimony definite establishing a width of 30 feet for the prescriptive period. Plaintiffs' witness Laurentia Cosgrove, who had lived at 6530-32 Clayton for 26 years, stated it was a "more or less hard road for about 12 feet or so." Defendants' land, as stated, was uninclosed, unimproved, unoccupied, and idle. It would have served no then purpose of the owner and would have been an unkindly act to keep the plaintiffs and their tenants off. The natural inference is that the use of land for a width in addition to 15 feet was permissive. This is consistent with the act of the owner of the unity of title at the time it constructed the garages on the south line of plaintiffs' lots and provided a way over its land at the rear of the lots without using any space on the lots for that purpose. The ▮▮▮▮ law should not penalize the owner for such conduct.

Pitzman v. Boyce, 111 Mo. 387, 19 S. W. 1104, 1105, 33 Am. St. R. 536, is to the effect that the mere use of the land of another without his consent, but with his knowledge, is not adverse, but permissive; and that: "If permissive in its inception, then such permissive character being stamped on the use at the outset will continue of the same nature, and no adverse user can arise until a distinct and positive assertion of a right hostile to the owner, and brought home to him, can transform a subordinate and friendly holding into one of an opposite nature, and exclusive and independent in its character."

We think what is quoted in Burnett v. Sladek, Mo. App., 251 S. W. 2d 397, 400, from Bradley v. City of Harrodsburg, 277 Ky. 254, 126 S. W. 2d 141, 142, is applicable to the city property here involved: " 'The law does not require an owner to adopt a "dog in the manger" attitude in order to protect his title to this species of property.' "

Boullioun v. Constantine, 186 Ark. 625, 54 S. W. 2d 986, 987, 988, involved a way over uninclosed and unoccupied lots in the city of Little Rock, and the court said in holding the user permissive: "Were the rule otherwise, there would be but few vacant lots in our cities and towns and uninclosed property in the country which might not be burdened by easements of passageways, as it is a matter of common knowledge that by the indulgence and good nature of the owners people are allowed to go across these uninclosed properties at will and until such time as the owners may desire to inclose them."

Improving the way by spreading thereon ashes from the furnaces and leftover gravel from a little concrete work done at one time or another (the hard surface described by some of plaintiffs' witnesses), if extending for a distance of 30 feet south of some of the garages as a convenience in backing out and for the prescriptive period, we think was not such a showing as to put the owner on notice of a claim of right by adverse user. There should be something more than unneighborly conduct connected with a harmless convenience in using what is open to use. Pitzman v. Boyce, supra; Foxx v. Thompson, 358 Mo. 610, 216 S. W. 2d 87, 91[4]; Anson v. Tietze, 354 Mo. 552, 190

1202

S. W. 2d 193, 199; Zinser v. Lucks, 361 Mo. 671, 235 S. W. 2d 844, 848 [6-8]; Freed v. Greathouse, 238 Mo. App. 470, 181 S. W. 2d 41, 43; Davidson v. Dunn, 16 Oh. App. 263, 270; King v. Battle Creek Box Co., 235 Mich. 24, 209 N. W. 133, 137[3].

The judgment with respect to the width of plaintiffs' easement of right of way is reversed; in all other respects the judgment is affirmed and the cause is remanded for the entry of a decree establishing a width of 15 feet for plaintiffs' easement in conformance with this opinion. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Leedy*, Acting P. J., *Ellison*, J., and *Bennick* and *Broaddus*, Special Judges, concur.