**HILLSIDE DEVELOPMENT COMPANY, INC.,** Respondent,

v.

**Roscoe FIELDS, Appellant.**

**No. WD 52032.**

Missouri Court of Appeals, Western District.

Aug. 27, 1996.

Rehearing Denied Oct. 1, 1996.

J. Patrick Shepard, Kansas City, for appellant

Gary M. Steinman, Schulz, Bender, Maher, Lee, Sexton & Hill, P.C., Gladstone, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Defendant–Appellant Roscoe Fields alleges that the trial court erred in rejecting his argument that he had an implied, or "visible" easement over the portion of the property of Plaintiff–Respondent Hillside Development Company on which sits a part of the driveway to Mr. Fields' home. We agree. The undisputed facts establish all of the elements for creation of a visible easement: the driveway constitutes an obvious and visible benefit to the residential lot, was constructed as a permanent means of access to and from the garage, was used for many years prior to the subdivision of the property as a means of access to the garage, and is reasonably necessary for the full beneficial use and enjoyment of the premises.

## I. FACTUAL AND PROCEDURAL BACKGROUND

All of the property which now belongs to Mr. Fields and to Hillside once constituted a single piece of property owned by Carl Nelson. In 1967, Mr. Nelson constructed a house on the portion of the property now belonging to Mr. Fields. The only public road providing access to the house was located on the south side of the property. For reasons not disclosed by the record,[1] howev-

---

1. Implicitly in their briefs and by filing competing motions for summary judgment, and explicit-

er, the house was designed with a basement garage located on the north side of the house. Consequently, in order to reach the garage, the driveway openly and visibly circles around the front (east) side and part of the far (north) side of the house in order to reach the garage entrance at the northwest corner of the house.[2]

This arrangement, while perhaps not perfect, has provided access to the garage from the public road since the house was constructed. It cannot be mistaken for anything other than an artificial improvement intended to create a beneficial, useful and permanent means of vehicular access from the public road to the garage. It caused no difficulties during the period in which Mr. Nelson owned the property on which the house and driveway are located as well as approximately 30 acres of surrounding land. When Mr. Nelson died in the 1970s, however, he left all of the house, driveway and surrounding real estate to Shriners Hospital. In 1984, the hospital subdivided the property. It sold off most of the unimproved land to plaintiff Hillside, including all or nearly all of the land on which the driveway was located. It retained the portion of the land on which the house was located. In addition, the title documents expressly reserve an ingress-egress easement for the use of the retained residential lot and house. This express easement runs along the portion of the driveway leading from the road to the house. This prevents the land on which the house is located from being landlocked. For reasons lost to history, however, this easement did not fully correspond with the location of the driveway. Rather, it failed to include a curved portion of the driveway measuring approximately 20 yards by 12 yards and which runs in front of the house.

In 1987, the hospital sold the house and lot to Mr. Fields. Due to the prior sale to Hillside, the title to the property bought by Mr. Fields noted that the curved portion of the driveway (located just a few yards from the front of the house) was not included in the title to Mr. Fields' property nor included in the express ingress-egress easement.

At the time of closing, Mr. Fields had read the title report and was aware that Hillside had record title to the disputed portion of the driveway, and does not claim that Hillside told him that he had a right to use the driveway, but he did testify that the realtor had represented to him before he bought the house that he had either ownership or a right to use the driveway due to adverse possession, as the driveway went with the house.[3] Mr. Fields said he accepted the realtor's statements and did not believe there would be a problem regarding use of the driveway. In addition, the record reveals that when Hillside subdivided and sold some of the land it had purchased from the hospital, it specifically excepted from the lots sold the triangular area at the back of its property over which Mr. Fields' driveway runs.

In 1992, Hillside filed a lawsuit against Mr. Fields for trespass and ejectment. Mr. Fields counterclaimed seeking a declaratory judgment that he had an implied easement across the disputed portion of the driveway. The parties filed cross-motions for summary judgment. The trial court rejected the implied easement theory and denied Mr. Fields' summary judgment motion, entering judgment in favor of Hillside for ejectment and trespass. This appeal followed.

## II. STANDARD OF REVIEW

▅▅▅ When considering an appeal from a summary judgment, the Court will review the record in the light most favorable to the

---

ly at oral argument, the parties have acknowledged that there are no material factual disputes and that this case can be decided as a matter of law. Accordingly, the statement of the facts set forth in this opinion is based on the undisputed factual assertions set out in the parties' motions, suggestions, affidavit and an illustration depicting the layout of the subject parcels.

2. The arrangement may be explained by the fact that the house's septic tanks and lines are located

at the rear, or west, side of the house, and would be damaged if a driveway were placed over them. The record does not reveal whether the tanks and lines were in place prior to the time the driveway was constructed.

3. There is no issue regarding adverse possession on appeal and Mr. Fields implicitly acknowledges that he has not obtained any rights by adverse possession.

party against whom judgment is sought. *Curnutt v. Scott Melvin Transp., Inc.*, 903 S.W.2d 184, 189 (Mo.App.1995). If a genuine issue of fact exists, summary judgment cannot be granted. *Hallmark v. Haenni*, 904 S.W.2d 31, 33 (Mo.App.1995). The disputed fact must be a material one which has legal probative force as to a controlling issue. *Id.*

Facts set forth in support of a motion for summary judgment are taken as true unless contradicted by the non-moving party. *Curnutt*, 903 S.W.2d at 189. The key to summary judgment, however, is the undisputed right to judgment as a matter of law, not simply the absence of a fact question. *Id.*

### III. *LEGAL ANALYSIS*

The sole issue for resolution is whether Mr. Fields obtained an implied easement for use of the driveway to his home. Hillside claims that Mr. Fields is precluded from claiming an implied easement because he was aware prior to closing that the encroachment was documented of record in the title report and because he was also aware that the express ingress-egress easement did not extend across the disputed portion of the driveway.

We disagree with the legal conclusions Hillside draws from the evidence. Neither the lack of an express easement for the driveway nor the existence of an express ingress-egress easement negates the existence of an easement implied from pre-existing use, also referred to as a visible easement. To the contrary, it is only when the title to property does not contain the claimed easement that the question even arises whether an implied easement exists, for if the easement were in the title, then it would be an express easement, not an implied one.

Missouri courts have developed the following four-factor test for the establishment of a visible easement:

1. There must have been a unity of common ownership followed by a separation of title of the subject property into dominant and servient estates;

2. The purported easement must have been constructed, altered or artificially arranged by the common owner so as to constitute an open, obvious and visible benefit or advantage to the claimant's property and a burden to the servient portion of the premises;

3. The purported easement must have been used long enough before the separation of title and under such circumstances so as to show that the alteration or artificial arrangement was intended to be permanent; and

4. The purported easement must be reasonably necessary for the full beneficial use and enjoyment of the dominant estate.

*Pendleton v. Gundaker*, 381 S.W.2d 849, 850 (Mo.1964); *Causey v. Williams*, 398 S.W.2d 190, 197 (Mo.App.1965); *Schnider v. M.E.H. Realty Inv. Co.*, 239 Mo.App. 546, 193 S.W.2d 69, 72 (1946).

There is no genuine issue of material fact that the first factor for establishment of a visible easement is satisfied. There was unity of ownership of the land in Carl Nelson and Shriners Hospital. This was followed by separation of the title into the property owned by Hillside and that retained by Shriners Hospital and later purchased by Mr. Fields.

Mr. Fields also satisfied the second factor of the test. The driveway was constructed by Mr. Nelson at the time the house was built and since that time has constituted an open, obvious and visible benefit to the advantage of Mr. Fields' property (which in this regard is considered the dominant estate), and a burden to the portion of the land owned by Hillside (which in this regard is considered the subservient estate).

The third requirement for establishment of a visible easement is also satisfied, for the house and driveway had been used for some 17 years prior to the separation of title through subdivision of the land by the hospital. Having been constructed of asphalt in a well-defined path from the public street and around the front of the house to the garage entrance to the north, the driveway clearly was meant to provide a permanent means of vehicular access to the garage. While Hillside says that Mr. Fields could not have relied on the easement as a means of access

because it was not included in the title to the land, this misses the point. As noted above, an implied easement necessarily arises at the time of severance by the common owner and by definition does not appear of record. Thus, Mr. Fields' awareness of Hillside's ownership is entirely consistent with his assertion of an implied easement given the open and obvious nature of the driveway leading to the garage. This is particularly true in light of the explanation given by the real estate agent that the driveway went with the house and the principle that Hillside stands in the shoes of the common grantor, Mr. Nelson.

Hillside also contests whether the law permits a finding that Mr. Fields established the fourth factor, that the easement is "reasonably necessary for the full beneficial use and enjoyment of the dominant estate." Hillside argues that having access to the garage is a mere convenience and not reasonably necessary where, as here, the property owner has an alternative legal means of access to his property. It notes that Mr. Fields' property would not be landlocked without the easement, and that he could build a new driveway at the back of his property or build a new garage. It suggests the expense and difficulty involved in such a venture, and the fact that it would make the current garage and driveway of no beneficial use to the property, does not provide a basis on which to find that the easement is reasonably necessary to the beneficial use and enjoyment of the dominant estate.

In making these arguments, Hillside inappropriately draws from the law governing the establishment of easements by necessity. It is well established that an easement by necessity will not arise in the absence of proof of strict or absolute necessity for the easement. *See, e.g., Restatement of Property* § 476 (1944). Because Mr. Fields' property would not be landlocked without the easement, he concedes that he cannot show the strict necessity required to establish an easement by necessity.

The rules governing establishment of an easement by necessity are not the same as those governing establishment of a visible easement, however. As noted above, in order to establish the latter, one needs to show only reasonable, not absolute, necessity. Just what constitutes reasonable necessity has been extensively litigated in Missouri and elsewhere. It is true, as Hillside notes, that some cases have stated that "the tendency of the courts, as a general rule, is to discourage implied grants of easements, since the obvious result, especially in urban communities, is to fetter estates, retard buildings and improvements, and violate the policy of recording acts." *Missouri State Oil Co. v. Fuse,* 360 Mo. 1022, 232 S.W.2d 501, 506 (1950).

Other, often later, cases, however, have recognized competing public policy considerations with regard to implied easements, including the policy favoring utilization of land and the principle that courts should not presume that parties intended to render land unfit for occupancy. *Causey,* 398 S.W.2d at 197. In this regard, *Causey* held that parties are presumed to have "contracted with a view to the condition of the property as it actually was at the time of the transaction and that after sale neither party has a right, without the consent of the other, to change to the detriment of the other, a condition which openly and visibly exists." *Id.* The principle of estoppel also often supplies another theoretical underpinning for implied easements because the party resisting the easement is said to stand in the shoes of the owner who created the quasi-easement prior to a subdivision of the land. *See Di Pasco v. Prosser,* 364 Mo. 1193, 274 S.W.2d 279 (1954).

In any event, the doctrine of visible easements looks at whether the easement is necessary to the *full* enjoyment of the dominant estate. While without the easement Mr. Fields would not be landlocked, he would not be able to use the garage or much of that portion of the driveway which is located on his property.[4]

In similar situations, a number of prior Missouri cases have recognized that a garage specifically constructed for use by the dominant estate at a time prior to separation of

---

4. In fact, were Mr. Fields to build a new driveway at the rear of his property, as suggested by Hillside, he would damage or not be able to use the septic tank and lines.

title to the property is reasonably necessary for the full beneficial use and enjoyment of the premises. These cases hold that access to other parts of one's property is not the controlling factor under a claim of a visible easement where the property owner is denied the use and enjoyment of such a significant, valuable and beneficial portion of the premises.

*Di Pasco* and *Foxx v. Thompson,* 358 Mo. 610, 216 S.W.2d 87 (1948), are particularly similar to the present case. In *Foxx,* a property owner owned a large piece of property. The property had access to Rockhill Road at the front and Locust Street at the back. The owner built three duplexes on the portion of the property in question, two of which fronted on Rockhill and one of which fronted on Locust. The lots on which these three duplexes were built adjoined at the rear of each property. The owner built a single, six-stall garage at the place where the three lots adjoined. He assigned a particular garage stall to each apartment in the three duplexes. The owner built a common approach apron used to enter and leave the garage stalls. The stalls and the approach and apron to the garage were continuously used by the residents of all three buildings.

Ownership of the lots was eventually separated. It was later determined that the apron and garages were built in such a fashion that the residents of each building had to either drive or park over a portion of another's property in order to use their portion of the garage. The Supreme Court affirmed the trial court's ruling that there was an implied easement for each property's continued use of its respective garage stalls and the concrete apron. The Court stated that "[a]s long as the garage stands and the ad-

joining owners maintain it as it was originally constructed" each neighboring owner is bound by the principles of implied easement. *Foxx,* 216 S.W.2d at 90–91.

In *Di Pasco,* a developer constructed a number of four-plex apartment buildings. Each had a four-car garage situated on the southernmost edge of its respective lot. The garage doors opened up on the south edge of each lot, so that the occupants were required to drive along a path established on the south side of the garages in order to enter or leave their respective garages. While the path to the garages was situated on a separate and vacant lot owned by the developer when the garages were built, several years later the developer sold the vacant lot to the defendant. The neighboring owners thereafter filed an action to establish an implied easement across the road on the vacant lot to their garages.

The Court concluded that because of the obvious path of the driveway to the garages and the manner in which the garage doors opened up onto the path, the defendant purchased the vacant lot with constructive knowledge that his predecessor intended the occupants of the fourplexes to have permanent access to their respective garages along the path on the south side of their property. *Di Pasco,* 274 S.W.2d at 284. The Court held that the defendant stood in the shoes of the common owner and could not claim that the occupants should be denied access to the garages. Finally, the Court found that the path to the garage entrances along the vacant lot to the south was reasonably necessary even though the neighboring owners had other means of access to the rest of their property from the road running along the front side of their lots.[5] *Id.* at 283–84.

5. It was also evident that the owners of the lots could each have constructed a driveway from the front public road to the back of the lots where the garages stood. *Di Pasco* stands for the proposition that such expensive and difficult alternative means of access do not negate a finding of reasonable necessity and do not prevent the recognition of a visible easement. *See also Henderson v. La Capra,* 307 S.W.2d 59, 63 (Mo. App.1957) (finding implied easement along driveway for vehicular access to rear of apartment building because such access deemed necessary for enjoyment of building and its efficient opera-

tion); *Greisinger v. Klinhardt,* 321 Mo. 186, 9 S.W.2d 978 (1928) (finding implied easement to entire lake adjacent to resort because the resort and the portion of the lake thereon would be worthless without an easement over entire lake).

Many other jurisdictions take a similar approach. *See, e.g., Rees v. Drinning,* 64 Cal. App.2d 273, 148 P.2d 378 (1944); *Rosendahl v. Nelson,* 408 N.W.2d 609 (Minn.App.1987); *Corbett v. Whitney,* 603 P.2d 1291 (Wyo.1979); *Winter v. Satchell,* 261 Or. 517, 495 P.2d 738 (1972); *James v. Gray,* 281 S.W.2d 114 (Tex.Civ.App. 1955).

The present case shares the essential elements of an implied easement with *Di Pasco* and *Foxx.* In each case there was once a unity of common ownership which subsequently had been severed, and the dominant estate claimed an easement that would provide the benefit of vehicular access to its garage. In each case the original owner made a deliberate alteration of the natural terrain by constructing a driveway or apron providing a permanent means of vehicular access to the garage. In each case there was a longstanding and obvious use of the path to the garage so as to preclude a subsequent owner of the adjacent lot from claiming surprise that an implied easement existed despite the lack of an express easement in the title. Similarly, in each case there was an alternative legal means of entry to the rest of the property. Nonetheless, in both *Di Pasco* and *Foxx* the court found that there was not a reasonable alternative means of entry to the garage and thus a visible easement would be implied in order to allow the owner full enjoyment of his property.

Here, as in those cases, absent recognition of a visible easement, Mr. Fields would not have full enjoyment of his estate, for he could not utilize his garage in a reasonable manner. We thus find that use of the driveway to Mr. Fields' garage is reasonably necessary for his full beneficial use and enjoyment of the premises. For these reasons, we reverse the judgment entered in favor of Hillside for trespass and ejectment and remand for further proceedings in accordance with this opinion.

All concur.