**BRICK HOUSE CAFÉ & PUB, L.L.C., a Missouri Limited Liability Company, and Flathd Properties, L.L.C., a Missouri Limited Liability Company, Respondents,**

v.

**Stuart A. CALLAHAN d/b/a Callahan's Body Shop, Appellant.**

**No. WD 59956.**

Missouri Court of Appeals, Western District.

June 28, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 22, 2002.

Anthony A. Stein, Kansas City, for Respondents.

Bruce B. Brown, Kearney, for Appellant.

Before VICTOR C. HOWARD, P.J., and BRECKENRIDGE and NEWTON, JJ.

VICTOR C. HOWARD, Presiding Judge.

Respondents filed suit against Appellant, who owned the property abutting Respondents' property in Smithville, Missouri, seeking to prevent his erection of a fence along the property line which divided an alleyway between their two properties. The Circuit Court of Clay County, Judge James E. Welsh, entered judgment granting Respondents an injunction enjoining Appellant from erecting any type of barrier or obstacle that would block Respondents' and others' use of the alleyway. Appellant appealed, alleging that the trial court erred on several grounds in granting an injunction. We remand.

### Facts

The Smithville, Missouri, properties in question were originally owned as a whole, as early as 1922, by Collins and Elizabeth Kindred, as husband and wife. The Kindreds operated a car dealership, which consisted of several different buildings, on the property with an alleyway running between the buildings. At some point in time, Mr. and Mrs. Kindred divided the property into various lots and transferred them to their children,[1] who leased some of

---

1. Although the parties indicated at trial that the original deeds for division of the property by, and transfers from the parents to, the children could not be located, the parties do not dispute that the parents originally owned the property as a whole and then divided it between and transferred different portions to their children and that these transfers occurred more than ten years prior to the initiation of Respondents' suit. The following prior or owners of Respondents' and Appellant's properties appear on the deeds of transfer in the record on appeal:

The property where Respondents operate their "Brick House" restaurant was transferred to them by "Charles A. Kindred and Wilma Kindred, his wife; Frances Durham, a single person; Joan Beatty and George Beatty, her husband; and Collins F. Kindred trustee and Loula B. Kindred trustee under a self-declaration trust agreement dated October 11, 1984."

Apparently, Appellant's property was divided into two separate lots when the Kindred parents devised the property to their children:

The first lot, which the record indicates is where the alleged easement runs, was

the buildings for various commercial purposes other than the family car dealership.

Appellant purchased his property in April of 1994. Respondents purchased their property on December 13, 1995. Appellant operates a body repair shop on his property, which we will refer to as the "Callahan property." The building housing his repair shop was built by the Kindreds in 1949. The back of his building faces the back of the building on Respondents' property, where Respondents operate a restaurant and drinking establishment called Brick House Café & Pub. (We refer to Respondents' property as the "Brick House property.") Between their buildings is an approximately forty-six-foot-wide gravel alleyway. The property line dividing Respondents' Brick House property and Appellant's Callahan property falls about in the middle of this alleyway, which had been frequently used by various people, without incident, including the prior owners of the property, their tenants, delivery vehicles, and trash trucks, prior to the dispute which led to this appeal.

Sometime late in the year 1999, or in early 2000, more than five years after he purchased the property, Appellant informed Respondents of his intention to build a permanent fence along the property line separating the Brick House Property from the Callahan Property. Respondents, asserting that such action by Appellant would effectively cause their

restaurant business to close because of their reliance upon the use of the alleyway, filed suit seeking to stop Appellant from erecting the fence. A preliminary injunction was issued. After a trial to the court, the circuit court issued an injunction against Appellant enjoining the erection of a fence or any other type of obstacle to prevent Respondents' use of the alleyway. This appeal follows.

### Discussion

This court is unable to definitively rule on the issues due to ambiguities and seeming inconsistencies in the trial court's judgment. *See Main St. Feeds, Inc. v. Hall,* 975 S.W.2d 227, 234 (Mo.App. S.D.1998) (reversing and remanding a judgment for further review due to the trial court's inconsistent and ambiguous findings and its failure "to identify with any particularity its basis for the part of the judgment that declared the respective parties have easements over the property of the other").

First, we note that in granting Respondents' motion for *permanent* injunction "in part," the trial court *"preliminarily* enjoined [Appellant] from erecting or causing to be erected any fence, barrier or other obstacle to prevent [Respondents, Respondents'] trash service collectors, and [Respondents' vendors] from travelling through and temporarily parking in the land between the back of [Respondents'] buildings and [Appellant's] buildings...." (Emphasis added.) Although not raised

transferred from the Kindred parents to "Charles A. Kindred and Wilma D. Kindred, his wife." In 1993, Mr. and Mrs. Kindred sold the property to Victor and Cheryl Holiman, husband and wife, and William and Betty Brandes, husband and wife. The Holimans and Brandes then sold the lot (along with the second lot) to Appellant in April of 1994.

The second lot making up Appellant's property was transferred from the Kindred parents to "Charles A. Kindred and Wilma

Kindred, Trustee, U/A/D 7/29/82; Frances Durham, a single person; George Beatty and Joan Beatty, husband and wife; and Collins F. Kindred and Loula Kindred, Trustees, T/A/D 10–11–84." In April of 1994, this lot was transferred to the Holimans and Brandes, who had purchased the first lot in 1993. Thus, lots one and two came under the ownership of the Holimans and Brandes who then sold both lots to Appellant in April of 1994.

by either party, there are concerns as to whether the "preliminary" enjoinment causes the judgment to lack finality as required for review under Rule 74.01.[2] Likewise, included in the trial court's many findings are findings such as "[Respondents] are likely to prevail on the merits of their case against [Appellant] based on the evidence adduced at trial," and "[i]f others, such as [Appellant] are harmed by the imposition of a *preliminary* injunction...." The judgment also mentions the lack of a survey despite the fact that a survey was admitted at the final hearing and is included in the record on appeal. However, it appears such wording may have resulted from clerical error in drafting the final judgment through use of the preliminary injunction issued in the case, and because we are remanding the case, we are certain that such clerical errors will be corrected.

Second, it is not clear to us on what basis the court issued an injunction, so we are unable to review whether the injunction is proper. A narrow reading of Respondents' petition suggests that they sought to establish either a necessary or prescriptive easement across Appellant's property. However, a broader reading of the petition, in light of the facts presented and the somewhat ambiguous and inconsistent findings of the trial court, suggests that the trial court may have intended to find either a prescriptive easement, and implied easement, or an easement of necessity.

For example, Missouri courts dictate that "[t]o establish a prescriptive easement, it is necessary to show use that has been continuous, uninterrupted, visible and adverse for a period of ten years." *Whittom v. Alexander–Richardson P'ship*, 851 S.W.2d 504, 508 (Mo. banc 1993). Here, Respondents only owned the property for five years as of the filing of the petition, so they were required to tack their use to that of the previous owners. *See Homan v. Hutchison*, 817 S.W.2d 944, 947 (Mo. App. W.D.1991) (explaining that "[t]he ten-year period of prescription can be created by the tacking together of successive owners' periods of continuous, uninterrupted, adverse use, each of which may be less than ten years but with their total amounting to ten years or more"). The trial court's finding that "when tacking all ownership interests of the Brick House Property and the Callahan Property respectively, ... the ownership of the [properties] was different ... for more than ten years immediately preceding the filing of [Respondents'] petition" suggests that the trial court sought to establish a finding of a prescriptive easement.

At the same time, however, the trial court's findings, which were not necessary to a finding of a prescriptive easement, suggest that the injunction could be based upon the finding of an implied easement or an easement of necessity. For example, the trial court made the following findings: "the alleyway has been used by any interested, third party traveler for ingress and egress since the late 1920's without the permission of the [properties'] owners"; "[t]here is no other place on the Brick House Property to store [Respondents'] trash and grease dumpsters except for in the alleyway just behind the Brick House building"; "[i]f such a fence was built, [Respondents] would suffer irreparable harm because [Respondents] would no longer be able to obtain trash and grease removal, or obtain deliveries from various vendors. Without such basic services, the Brick House Restaurant would be forced to close"; and "[i]f others, such as [Appellant], are harmed ... no such harm shall be as great as the harm that [Respondents] will suffer if [Appellant] erects the fence." The trial court also found, "[t]he

---

**2.** Rule references are to the Missouri Rules of Civil Procedure (2002).

public interest is served by enjoining the erection of the fence because [Respondents'] restaurant is a successful contributor to the Smithville community, and the public interest is served by maintaining continued trash pickup." Essentially, the trial court's findings include facts which appear to lend support to finding one of the three types of easements—implied, necessary, or prescriptive.

Rule 84.14 dictates that *"[u]nless justice otherwise requires,* [this] court shall dispose finally of the case." (Emphasis added.) Here, due to the ambiguities and inconsistencies in the trial court's judgment, justice otherwise requires that we remand the case to the trial court for review and clarification of its basis for the granting of an injunction in favor of Respondents. *Main St. Feeds,* 975 S.W.2d at 234. The trial court may, in its discretion, wish to consult *Hillside Development Co., Inc. v. Fields,* 928 S.W.2d 886, 889–92 (Mo. App. W.D.1996) (easements by implication) and *Whittom,* 851 S.W.2d at 508–09 (prescriptive easements) in addition to other cases discussing elements of the various types of easements. *See also Main Street Feeds,* 975 S.W.2d at 234 (directing the trial court on remand to cases discussing private roadways across property of another, implied easements and prescriptive easements). The trial court may also, in its discretion, allow for the submission of new evidence as well as an amendment of the pleadings if it should deem such action necessary.

### Conclusion

We remand for further proceedings in accordance with this opinion.

BRECKENRIDGE and NEWTON, JJ., concur.