OTTO H. JACOBS and ANTOINETTE JACOBS, His Wife, Appellants, v. LANORE BREWSTER, JAMES L. LILLIS, Trustee, and M. JOHNSON. —No. 39537.—190 S. W. (2d) 894.

Division Two, December 3, 1945.

*Harvey E. Hartz* and *Dwight M. Smith* for appellants.

*G. W. Duvall* and *Elliott H. Jones* for respondents.

BARRETT, C.—By this action Mr. and Mrs. Otto H. Jacobs sought to quiet the title to and enjoin the use of a strip of land constituting a part of a joint driveway. The defendant, Lanore Brewster, claimed an easement in the strip of land and asked that Mr. and Mrs. Jacobs be enjoined from interfering with her use of the driveway.

The trial court found that in 1924 the plaintiffs and Ernest W. Lamy, the then owner of Mrs. Brewster's lot, constructed a joint driveway and a joint garage on their adjoining lots, each paying one-half the cost and each contributing an approximately equal amount of

space. The court found that from and after 1924 Mr. Lamy and Mrs. Brewster's other predecessors in title had used the driveway for more than the ten year period prescribed by the statutes of limitation, all the while claiming the right to do so—to the plaintiffs' knowledge—and, therefore, the defendant had acquired and established an easement by prescription in that part of the plaintiffs' strip of land occupied by the driveway. (The court also found that Mrs. Brewster was entitled to an easement by reason of necessity but it should be stated that the evidence does not show with certainty whether there was sufficient space on the west side of Mrs. Brewster's lot for a driveway. Seested v. Applegate (Mo. App.), 26 S. W. (2d) 796, 797.) The court found that Mr. and Mrs. Jacobs and Mrs. Brewster were the absolute owners of their respective adjoining lots but the court also found and decreed that each owner's absolute title was subject to an easement in his or her neighbor, consisting in the right to use the joint driveway as a means of access to the joint garage. Accordingly, the court enjoined Mr. and Mrs. Jacobs from interfering with Mrs. Brewster's lawful use of the driveway.

The court having decreed reciprocal easements in the respective owners of the adjoining strips of land comprising the driveway, title to real estate is involved and jurisdiction of the appeal is properly in this court. Davis v. Lea, 293 Mo. 660, 239 S. W. 823. Compare: Oliver v. Wilhite, 329 Mo. 524, 45 S. W. (2d) 1083.

Mr. and Mrs. Jacobs contend that the court erred in finding and decreeing an easement. They take the position, in the first place, that an easement may be created by grant only. In this connection it is urged that when the evidence shows a prescriptive right to an easement a mere rebuttable presumption arises that there must have been a grant originally but that the original grant has been lost or destroyed, consequently, an easement may not be found upon the inferences drawn from the mere presumption when it is demonstrated that there had never been a grant. They contend, in the second place, that the evidence in this case does not show an easement by prescription, that is by use for the period of the statutes of limitation, because the defendant's use of the plaintiffs' strip of ground was permissive only and not adverse. They say, in this connection, that there was no distinct and positive assertion of a right to use the driveway by Mrs. Brewster, hostile to the plaintiffs' absolute right and interest, and that a continuous use for the period of ten years was not shown.

There never was a grant of an easement for a driveway or garage in this case, in the sense of a transfer by deed or other formal conveyance by either of the adjoining landowners. Neither is there any evidence from which it could be inferred that there had once been a formal instrument of conveyance, since lost or destroyed, creating reciprocal easements. A formal grant is one of the recognized, certain

and unmistakable methods of creating an easement. Jones, Easements, Sec. 80; 28 C. J. S., Sec. 5. An easement, being "an interest in land in the possession of another," is necessarily "capable of creation by conveyance." 5 Restatement, Property, Sec. 450. And, it is true that many of the cases have said that "An easement can only be created by grant" and that "prescription, which presupposes a grant" is merely one of several ways of proving the grant. Kuhlman v. Stewart, 282 Mo. 108, 115, 221 S. W. 31, 33. But we have outgrown the use of the obvious fiction of a supposed grant when dealing with easements by prescription. Sanford v. Kern, 223 Mo. 616, 629, 122 S. W. 1051, 1055-1056; 17 Am. Jur., Sec. 55. Prescription, when all the requirements of the doctrine are present, is now another well-recognized manner of creating or acquiring an easement. 5 Restatement, Property, Sec. 457; Faulkner v. Hook, 300 Mo. 135, 142, 254 S. W. 48, 52. And the decisive and determinative question in this case is whether the evidence demonstrates an easement by prescription; that is by "adverse user as of right, openly and uninterruptedly (continuously), for more than ten years." Sanford v. Kern, 223 Mo. l. c. 626, 122 S. W. l. c. 1055; 5 Restatement, Property, Secs. 457, 458, 459, 460.

There is no controversy as to what the plaintiffs and the defendant and her predecessors in title did with reference to the driveway and garage, neither is there a dispute as to any fact material to the case. The controversy turns upon the interpretation to be placed upon the acts and conduct of the parties and the legal effect of undisputed facts. Mr. and Mrs. Jacobs have owned their lot since 1911. Mr. Lamy purchased the adjoining lot, to the west, in 1924 or 1926. In one of those years the plaintiffs and Mr. Lamy built a joint driveway and a joint garage on the dividing line of their adjoining lots. They divided the expense (approximately $350.00) of building the drive and the garage. The plat, which the plaintiffs offered in evidence, shows that 11:65 feet of the stucco garage is on Mrs. Brewster's lot, while 8:65 feet of the garage is on Mr. and Mrs. Jacobs' lot. The driveway covers approximately the same amount of space on each lot. The first thirty-five feet of the driveway is of solid concrete, about six and one-half feet in width, and the remainder of the driveway consists of two strips, "ribbons," of concrete, one and one-half feet wide. One of the strips of concrete is on the plaintiffs' lot and the other strip is on the defendant's lot. The plaintiffs and Mr. Lamy, and his family, used the driveway and the garage until 1929 when the Lamy family sold their lot or the title to it was transferred by the foreclosure of a deed of trust. Thereafter the Lamy lot was transferred by deeds and trustees' deeds until Mrs. Brewster became the owner in 1943. Five or six years prior to 1943 and before becoming the owner of the lot, Mrs. Brewster rented the upstairs rooms of the house and lived there with the then owner. Throughout the period,

from the time the garage and driveway were built until the present, Mr. Jacobs and the members of his household have used the garage and the driveway. When the owners of the Lamy property or their roomers had an automobile they used the garage and drive.

As indicated, the essence of prescription is use, "such use of land, for the period of prescription, as would be privileged if an easement existed." The test of the use, whether it has been of such character and quality as to meet the requirements of prescription, depends upon whether it was adverse, continuous and uninterrupted for the period of prescription. 5 Restatement, Property, Sec. 457; Sanford v. Kern, supra. Ordinarily permissive use, or a mere license, may not ripen into adverse use and an easement, (Pitzman v. Boyce, 111 Mo. 387, 392, 19 S. W. 1104, 1105) but the use of the land is adverse, as against the owner, if it is not made in subordination to him, is open and notorious and is not wrongful as to him. 5 Restatement, Property, Sec. 458. As others have pointed out, the mere application of these necessarily ambiguous and intangible terms of general definition, though accurate, does not immediately produce a solution of the problem, posed by the proved facts, whether the use of the land was adverse and an easement or permissive only and revocable at will. 41 Mich. L. R. 1130. There being no conclusive proof of a mere license by the plaintiffs and no conclusive proof of an easement by the defendant, whether the use was prescriptive in character or permissive only is, of necessity, a fact to be inferred and determined from the circumstances, the nature and character of the use, measured by these general principles. Phillips v. Bonadies, 105 Conn. 722, 727, 136 Atl. 684, 686; Sanford v. Kern, supra.

Mr. and Mrs. Jacobs contend that an easement by prescription was not created and could not be found because the original parties to the transaction had no intention of creating an easement but on the contrary had a mutual understanding or agreement that either of them had the right, from the beginning, to close the driveway at any time and build a fence between the two properties if they desired. In short, they contend that the use of the driveway was permissive only or under a license, in its inception, and, therefore, the use of it could not become adverse and ripen into an easement. Pitzman v. Boyce, 111 Mo. 387, 392, 19 S. W. 1104, 1105; Kuhlman v. Stewart, supra. In substantiation of their position they offered in evidence a letter from Mr. Lamy to them, dated April 10, 1926. The letter said:

"I do not think it necessary or wise for us to grant a formal easement for the driveway between our two properties at 1314 and 1316 E. 29th St., to each other, because it is too permanent. Either one of us might sell out and move away—and someone else would move in that would be an objectionable neighbor. I want to reserve the right to tear up the driveway on my side and build a partition fence if I find it necessary."

Mr. Jacobs said that he did not talk to Mr. Lamy about the letter, request it or answer it. He said: "There was no necessity for it. He traveled. We were good friends." He stated that he had not asked for an easement and that Mr. Lamy just sent the letter to him. Thereafter the driveway and garage were used as we have indicated.

Mr. Jacobs said that the driveway was constructed in 1926, two or three months prior to his receipt of the letter. But Mrs. Brewster's evidence tended to show, as the court specifically found, that the driveway was built in 1924. In view of the finding, the letter was written two years after the drive had been constructed. And, as the respondent points out, there is one notable omission in the letter, it mentions but a part of the joint improvement. The letter speaks of the driveway and does not mention the garage. In this connection it should be noted that Mr. and Mrs. Jacobs propose to close and equably fence the driveway only. In their petition they renounce any claim to an interest in any portion of the garage located on the defendant's property and offer to remove their part of the garage from her land. When Mr. Jacobs testified, however, he said that he did not intend to move his part of the garage off of Mrs. Brewster's lot but intended to "just put a partition in there and that is all. . . . Partition on my lot." Considering the sequence of events and all the circumstances—prior and subsequent to the letter—it may not be said as a matter of law that the letter, referring to the driveway only and written, as the court found, two years after the event, conclusively establishes that the parties originally contracted, as they could have, that their mutual use of the driveway was and should be permissive only or a mere revocable license, with no intention of creating an easement. Sell v. Finke, 295 Ill. 470, 476-477, 129 N. E. 90, 92; Outhwaite v. Foote, 240 Mich. 327, 215 N. W. 331. It must be admitted, however, that the letter is a circumstance in favor of the plaintiffs and indicative of a license or permissive use only. Though we need not discuss the point, it should be noted in passing that it is possible for the parties to have used the land permissively only or ▮▮▮ under a license, for a time, and yet their use of and interest in the land become adverse and ripen into an easement. House v. Montgomery, 19 Mo. App. 170, 181; annotation 44 L. R. A. (N. S.) 89.

▮▮ It is urged by the plaintiff-appellants that the evidence in this case may not pass the test of adverse use because the "assertion of a hostile right," prior to the running of the prescriptive period, is not shown and the use proved was not continuous within the meaning of the definition.

To demonstrate that the use was not "continuous" the plaintiffs point to the fact that Mrs. Brewster did not purchase her property until 1943 and that previously she had been but a tenant or roomer of the owner. It is argued, counting the years of her tenancy even, that

she could have used the property for but seven years. It is said the evidence shows that for a period of time no one on the Lamy-Brewster side of the property actually used the driveway. The latter statement is based on Mr. Jacobs' testimony that there was a time when he and an adjoining owner of the lot did not have an automobile. The impression he sought to convey and the inference he would have drawn is that the use was interrupted by reason of the fact that for the past three years he had not owned an automobile and the owner following Mr. Lamy did not own an automobile. The argument, however, overlooks the fact, as Mr. Jacobs testified, that he and the members of his family used the garage and the drive from the time they were constructed until the present, when they had an automobile. Furthermore, it overlooks the fact, to which he also testified, that owners other than Mr. Lamy, the members of their household and roomers, made periodic use of the driveway and garage—even though some owners may not have had an automobile to drive over the way. The questions and answers were: ''Q. The driveway was being used by you and the tenants if they had a car from the time it was built? A. Yes, sir. Q. Up to the present time? A. Not up to the present time I didn't use it for three years. Q. Up to three years ago you used it? A. My son and not me. Q. And some of these other tenants or owners used it? A. Yes, sir. The Court: Did you say 'Yes'? What was your answer, yes or no? . . . The Court: He answered it 'Yes.' '' True enough, the possession or use of land by a tenant is the landlord's possession and not the tenant's. But, if a tenant or a roomer in the home of an owner drives over the way and occupies the garage, does he not do so in the exercise or assertion of his landlord's right and is not that a use of the way by the owner? ''Continuous,'' under the terms of the definition, does not mean ''possession.'' ''He who has an easement in particular land is not and cannot be thereby in possession of the land; he can only use it.'' 5 Restatement, Property, p. 2924. Nor does the requirement of ''continuous'' mean that the use or the right to use must be ''constant.'' ''The requirement means that there be no break in the essential attitude of mind required for adverse use rather than that the use be constant.'' 5 Restatement, Property, Sec. 459, p. 2936. If the use is ''adverse,'' within the meaning of the definition, the benefits of it, in creating an easement, accrue not only to the adverse user but to ''the adverse user and others.'' The use, to be continuous, must be shown to have been for the period of prescription (here ten years) and intermittent or interrupted periods of use may not be added to make out the period (Seested v. Applegate (Mo. App.), 26 S. W. (2d) 796, 799) but tacking, the adding together of successive periods of adverse use by persons in privity with one another, is permitted. ''For the purpose of making out the period of prescription, the periods of use of successive adverse users may be added if privity exists between them.'' 5 Re-

statement, Property, Secs. 462, 464. The evidence in this case shows a direct chain of title from Mr. Lamy through successive owners to Mrs. Brewster and it may be confidently asserted, as the court found, that successive owners, from Mr. Lamy in 1924 to Mrs. Brewster in 1943, "used the driveway to get to and from their garage on the rear of said lot." Faulkner v. Hook, supra.

It is asserted that an easement by prescription could not be found because the evidence does not show, prior to the ten year period, "a distinct and positive assertion of a right hostile to the owner and brought home to him." The plaintiffs emphasize the phrase "hostile right" and say that there was no assertion of such right by the defendant until she filed her answer claiming an easement or, at least, until she purchased the lot in 1943. It is argued ▮▮▮ that no one of the owners in the Lamy-Brewster chain of title ever claimed or asserted that they had an easement in the driveway. They point to the fact that all the record conveyances in that chain of title do not mention reciprocal easements or rights of any kind in the Jacobs property. In the face of this omission it is urged that there could not be an assertion of a hostile right and an easement. But, as we have pointed out, the essence of an easement is *use*. And the test of adverseness is the character and quality of that use. The better definitions do not use the words "hostile right,"—they say "provided the use is adverse." 5 Restatement, Property, Sec. 457. But, assuming that "the assertion of a hostile right" is required, it does not follow that there must have been affirmative acts of hostility in the sense of belligerency. "A claim of right, in essence, rests in intent" as exemplified by acts and conduct. Sanford v. Kern, supra. "A use of land is adverse to the owner . . . when it is not made in subordination to him, and (is) open and notorious." It is not even necessary that it be made "either in the belief or under a claim that it is legally justified." "Adverse," under the definition, means that the one making the use "shall not recognize in those as against whom it is claimed to be adverse an authority either to prevent or to permit its continuance. It is the non-recognition of such authority at the time a use is made which determines whether it is adverse." 5 Restatement, Property, Sec. 458 and comment pages 2925-2926; Phillips v. Bonadies, supra.

We have found that the use in this case was "continuous." It was apparent, that is visible and, therefore, necessarily seen and known by the plaintiffs. Annotation 41 A. L. R. 1442; 74 A. L. R. 1250. Consequently, there was acquiesence by the plaintiffs in whatever use the adjoining lot owners made of the way and the garage. And "acquiesence" does not mean an active permission or a license but means "quiesence" and is a circumstance indicative of adverse use. Dartnell v. Bidwell, 115 Me. 227, 231, 98 Atl. 743, 745. Mr. and Mrs. Jacobs do not claim to have interrupted, either by word or

deed, whatever use the respondent and her predecessors in title may have made of the improvements. For cases of this type see the annotation in 5 A. L. R. 1325. The letter was offered in evidence, not to show that the use had been interrupted or to deny the respondent's right to use it, but to show that there had never been any use other than permissive. Compare:. Dartnell v. Bidwell, supra. Two circumstances, according to their testimony, precipitated this controversy and caused Mr. and Mrs. Jacobs, for the first time, to assert the right to close the driveway. In 1943 a truck, delivering coal or cement to Mrs. Brewster, broke the "ribbon" strip of concrete on the Jacobs' side of the drive. Mr. Jacobs paid for fixing it and warned Mrs. Brewster. The other circumstance was that Mrs. Jacobs' bedroom was next to the drive and people in Mrs. Brewster's home awakened her when they drove in late at night.

The indisputable facts here are that the parties built the garage and the driveway, divided the expense and used them. Each successive owner made whatever use of the improvements his or her predecessor in title had made of it and in the same right and such use was not necessarily in recognition of a right on the part of the plaintiffs to stop it or interfere with it. 4 Tiffany, Real Property, Sec. 1196. In any event, the respondent and her predecessors in title did not claim to use the driveway under the mere gratuitous permission of the adjoining owner. The use which either of these parties made of the way certainly did not have its origin "in a mere act of neighborly good will." And, as has been pointed out, these are the distinguishing circumstances of Pitzman v. Boyce, 111 Mo. 387, 19 S. W. 1104, where the right of use was claimed to have been by permission. See Sanford v. Kern, 223 Mo. 1. c. 626, 122 S. W. 1. c. 1055.

There is another way of viewing the acts and conduct of the original adjoining owners which is indicative of their intention, initially. Each neighbor furnished an approximately equal amount of space. They built a concrete driveway and a stucco garage and each paid one-half the expense. Both owners began using the driveway and the garage. Nothing more than the bare facts of what they did appearing, there was an executed contract and such subsequent use of the improvements as the acts and conduct of the parties undoubtedly contemplated. And that use was certainly not permissive only but as of right. Sanford v. Kern, supra. "While the mere permissive use of a way over the land of another will not ripen into an easement, yet one who joins his adjacent landowner in the construction of a paved private way over and along the medial line has given such adjacent owner more than a mere license. Each owner, by use of the driveway, is continuously asserting an adverse right in the portion of the way on the other's lot." Annotation 98 A. L. R. 1. c. 1100. The parties, by their conduct and mutual use of the way, indicate that they intend to create reciprocal easements.

738

Johnson v. Whelan, 171 Okla. 243, 42 Pac. (2d) 882; 98 A. L. R. 1096; 28 C. J. S., Sec. 18j, p. 673; Jones, Easements, Sec. 277.

▉ Another circumstance justly considered in arriving at the initial intention of the parties and in determining whether the use was adverse or permissive is the permanent or temporary character of the improvement and its contemplated use. If the arrangement was a mere temporary accommodation permissive use is indicated. On the other hand, if the improvement and the arrangement for its use has the earmarks of permanency, adverse use is indicated. 41 Mich. L. R. 1130, 1131. The improvements themselves, while not indestructible or unchangeable, are fixed and, considering their location and composition, are more permanent in character than temporary. The parties immediately made such mutual use of the way and the garage as their location and construction contemplated. That such mutual use was to last for a limited time only is not indicated by either the location and character of the improvements or by the use actually made of them. The least that can be said of it all is that the parties must have contemplated an arrangement which would endure indefinitely, rather than an arrangement for a limited time only. The circumstances of permanency of improvements and of arrangement indicate adverse use and an easement rather than mere permissive use or a revocable license. Holm v. Davis, 41 Utah 200, 207, 125 Pac. 403, 406; 41 Mich. L. R. 1130.

▉ Despite a reluctance to infringe upon the rights normally incident to the absolute ownership of land (Freed v. Greathouse (Mo. App.), 181 S. W. (2d) 41, 43), the weight of the contrasting circumstances indicate adverse rather than permissive use. Sanford v. Kern, 223 Mo. l. c. 626, 122 S. W. l. c. 1055; 41 Mich. L. R. l. c. 1132. The evidence shows, as the court found, mutual open, known and uninterrupted adverse use of the way for more than ten years and resulting reciprocal easements by prescription.

The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.