Russell G. DETERT and Frances C. Detert and Katharine Detert Fitch and James E. Fitch, Plaintiffs-Respondents,

v.

Fred J. LEFMAN and Lorene M. Lefman, Defendants-Appellants.

No. 24504.

Kansas City Court of Appeals.

Missouri.

June 6, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1966.

Application to Transfer Denied Nov. 14, 1966.

W. R. Schelp, Ike Skelton, Jr., Lexington, for appellants, Skelton & Bradley, Lexington, of counsel.

H. Townsend Hader, Lexington, for respondents, D. W. Sherman, Jr., Lexington, of counsel.

MAUGHMER, Commissioner.

Plaintiffs sought a mandatory and permanent injunction, (1) requiring defendants to remove an obstruction from a driveway; (2) forbidding any future obstruction thereon; and (3) a judicial determination declaring the roadway to be a common driveway. Plaintiffs prevailed in all respects and defendants have appealed.

Plaintiffs, Russell G. Detert and Frances C. Detert, husband and wife, and James E. Fitch and Katharine Detert Fitch, husband and wife, are the owners of Lot 5, Block Q in Chamblin's Addition to the City of Higginsville, Lafayette County, Missouri. The defendants Fred J. and Lorene M. Lefman, husband and wife, own Lot 4, which adjoins Lot 5 on the north. The driveway in question runs east and west, is 7 feet wide, approximately 80 feet long, and lies partly on both lots, but mostly on defendants' lot. A residence has been built on each property.

Mr. Arthur H. Fieth, who is now a bookkeeper and office manager for a drug store in Lincoln, Nebraska, testified. He lived in what is now the Lefman house from January, 1926 until May 30, 1939. The adjoining Detert property was then occupied by the August F. Detert family. Mr. and Mrs. August F. Detert were the parents of the present Detert plaintiffs. He said he bought this property "from the Grau Estate". However, the deed was to his father, with whom the witness had a contract to purchase. This witness testified that in 1930 or 1931, a driveway was built between his home and the Detert home; "that it was put there in order to get in and out of the place, and Mr. Detert built a garage—was planning on building a garage, so he could get in and out of that garage, and I was also planning on building a garage adjacent to his, which I never did * * * ". He said the driveway consisted of two strips or two ribbons of concrete and was built as planned, "partially on the Detert property and one strip on my property", "I paid for the part on my property

and he paid for the other". The strip on the Fieth—now Lefman property—was wider than the other strip because it was to be used partly as a sidewalk. The witness said Mr. Detert then built a garage and used the driveway. Although Mr. Fieth did not build a garage, he did use the driveway and parked his car "beyond the end of the driveway". Both used the driveway all the time Fieth lived there, that is, until May 30, 1939.

Mr. Harry Dean Wright, tenant in the Lefman house from about 1943 until 1952, used the driveway and parked his automobile at the back end of it. He said Mr. and Mrs. Detert also used the driveway during this whole period.

Emma Mae Davenport, a secretary, has occupied as tenant, an upstairs apartment in the Detert house since 1952. She owned an automobile and used the garage from 1952 until 1958, when she disposed of her car. She said that a carport had been built on the back part of the Lefman house and the tenant in that house, a Mr. Wagner, used the driveway to get to the carport. Mrs. Davenport said that about April 8, 1964 "stakes were put in the driveway" which restrained use of it.

Daisy G. Newman, secretary to the Board of Education, Higginsville, has occupied the Detert downstairs apartment since 1958. She owns an automobile and parked it in the garage at the end of the driveway until April, 1964, when she found stakes driven into the ground across the driveway, which prevented her use of and denied her access to the garage. One of the plaintiffs, Katharine Detert Fitch, as a child, lived in the Detert home from 1919 until her marriage in 1933. She knew that the tenants in both properties had used the driveway for many years and recalled it was built about 1931.

The defendant, Fred J. Lefman, called by plaintiffs, admitted blocking the driveway with "three stakes" which he put in on April 8 and which he removed on April 24, 1964. On cross-examination he said all of the driveway except about 7 inches was on his property and that whatever use the Detert tenants made of it was by his permission and not as a matter of right. He was permitted to recite conversations which he said he had with August F. Detert (who was deceased at the time of the trial) and with the plaintiff James E. Fitch in 1953. He said August F. Detert sought and he gave permission for the Detert tenants to use the driveway. He said James E. Fitch asked and demanded an "easement", which he refused to give him.

James E. Fitch, plaintiff, described a conversation he had with Fred J. Lefman in front of a drug store in Higginsville. He said his tenant, Mrs. Davenport, was not using the Detert garage at the time and he gave Lefman permission to use it, but specifically retained the right to resume the use for his tenants when they needed it. He recalled a second conversation in 1963, in which he said he told Lefman: "We had an easement because of common usage over many years". Lefman's tenants at that time were using the garage and Fitch wanted it for his tenants. He said Mr. Lefman asked "for two weeks to think it over". When the two weeks ended, Lefman refused to vacate.

The defendants offered and there was received in evidence the Lafayette County Circuit Court records in Case No. 8660, styled "Russell G. and Katharine Detert Fitch, plaintiffs, vs. Fred J. and Lorene M. Lefman, defendants", including the pleadings and the judgment entry therein. Defendants offered nothing further except as their defense was developed by the cross-examination of the defendant Fred J. Lefman, who was called by plaintiffs. Examination of Cause No. 8660, as it appears in the transcript of the case before us shows that the petition was filed May 28, 1963 and the case was tried on October 31, 1963. The petition alleged the existence and construction of the roadway and garage involved in our suit, that defendants had used plaintiffs' garage and owed rental therefor in the sum of $115, and plaintiffs had received notice

from defendants that they could not use the driveway after June 1, 1963, and praying for an injunction "restraining defendants from interfering with the use of the driveway". There was a general judgment for defendants, which included a recitation that defendants offered no evidence. There was a general finding for defendants and the prayer for injunction was denied. It is noted that in the memorandum opinion entered in connection with the judgment of the case before us the court commented as follows relative to the first case:

"The evidence in the first case disclosed that although there had been some dissatisfaction and conversations in regard to the use of the driveway and garage, actually there was no obstruction of the use of the driveway and the plaintiffs and their tenants had free and unlimited access and use of the driveway and garage up to the time of trial."

On September 18, 1964, judgment and decree herein as follows was entered:

### *"JUDGMENT AND DECREE*

"Now on this day this cause, having been previously heard and taken under advisement, is again taken up. The Court finds that the allegations in the plaintiffs' petition are true and it is ordered, adjudged and decreed that a driveway seven (7) feet wide and running westerly eighty (80) feet from Shelby Street in the City of Higginsville, Lafayette County, Missouri and located between the houses owned by plaintiffs and defendants is declared to be a common driveway for the mutual use and benefit of the plaintiffs, the defendants, and their successors in title; and it appearing that the plaintiffs are entitled to the relief prayed for in their petition;

"It is therefore ordered and adjudged that the defendants and each of them, their agents and employees, and all persons claiming under them or acting under the direction or authority of them, or either of them, be and they are hereby perpetually enjoined and restrained from obstructing or interfering with the use of said driveway by plaintiffs or their successors in title".

On the same day the court filed its memorandum opinion, which we set out in full:

"This is a suit to enjoin defendants from obstructing a driveway located between two houses owned by the parties.

"In about 1931 the predecessors in title of these two houses mutually agreed to build a driveway between the houses for the purpose of getting their automobiles to the back part of their respective lots and homes. Two concrete slabs were laid. Each party paid one-half of the cost of this permanent construction. The driveway was seven feet in width and was located mostly on the property now owned by defendants. A small part of the driveway was located on plaintiffs' property. At about the same time the driveway was constructed or shortly thereafter the plaintiffs' predecessor in title built a double garage on his lot just past the end of the concrete slabs of the driveway. This driveway was used continuously by owners and tenants until April 8, 1964, except for two short periods when the driveway was closed because of repairs to house and street. On April 8, 1964, defendants placed stakes in the driveway so that the plaintiffs and their tenants could not drive their automobiles on the driveway and into the garage.

"On May 28, 1963, a suit was filed in this Court, No. 8660, involving this same driveway. That case was heard on October 31, 1963, and judgment was rendered for the defendants.

"The evidence in the first case disclosed that although there had been some dissatisfaction and conversations in regard to the use of the driveway and garage, actually there was no obstruction of the use of the driveway and the plaintiffs and their tenants had free and unlimited access and use of the driveway and garage

up to the time of trial. The cause of action on which the present case, No. 8849, is based, did not arise until April 8, 1964, about six months after the date of the first trial. Although it is true that res judicata applies not only to those issues of ultimate fact which were actually litigated but also to those which might have been litigated, it is plain in this case that one of the ultimate facts in this case, to-wit: whether or not defendants obstructed the driveway on April 8, 1964, was not, and could not have been litigated on October 31, 1963. Under those circumstances this Court rules that the plaintiffs in this case are not estopped by reason of res judicata.

"The facts in this case as outlined above are quite similar to those in Jacobs v. Brewster [354 Mo. 729], 190 SW2 894 and Judge v. Durham [Mo.App.], 281 SW 2 16. In accordance with the law as declared in those cases, this Court rules that the use of the land by plaintiffs was not by mere license subject to being revoked at will by defendants, but rather was a mutual, open, known and uninterrupted use of the way for more than ten years and resulted in reciprocal easements by prescription."

Defendants on appeal make three assignments of error: They say the petition fails to state a cause of action because "the allegations of adverse user are not *pled*". The case was tried on the issue of permissive or adverse use and the defense of res judicata. This point is without merit and is denied.

Appellants say the use made by plaintiffs was by virtue of a license and was a permissive, but not an adverse use and hence judgment should have been for defendants. We agree with defendants' assertions that plaintiffs must sustain the burden of proof as to their prescriptive right, Seested et al. v. Applegate et al., Mo.App., 26 S.W.2d 796, and the mere permissive use cannot ripen into an easement. Anthony

et al. v. Kennard Bldg. Co., 188 Mo. 704, 87 S.W. 921. We review the evidence and reach our own conclusions in this equity case, giving due deference, however, to the trial judge, who saw, heard and observed the witnesses, Sanderson et ux. v. Less et ux., Mo.Sup., 296 S.W.2d 81, 83.

The general rule on the main issues before us is stated in 28 C.J.S. Easements § 18, page 673:

"* * * the weight of authority is to the effect that, where adjoining proprietors lay out a way or alley between their lands, each devoting a part of his own land to that purpose, and the way or alley is used for the prescriptive period by the respective owners or their successors in title, neither can obstruct or close the part which is on his own land; and in these circumstances the mutual use of the whole of the way or alley will be considered adverse to a separate and exclusive use by either party".

This general rule was cited and approved by this court in Judge v. Durham et al., 281 S.W.2d 16, 21, a case involving a driveway jointly constructed and used for more than 10 years. The easement was upheld and the facts are analogous to those in the case before us.

In its memorandum opinion the trial court referred to the holding by the Supreme Court in Jacobs et ux. v. Brewster et al., 354 Mo. 729, 190 S.W.2d 894, 895. The subject matter, facts and judgment in that case are strikingly similar to those in the case before us. We quote from the opinion:

"The trial court found that in 1924 the plaintiffs and Ernest W. Lamy, the then owner of Mrs. Brewster's lot, constructed a joint driveway and a joint garage on their adjoining lots, each paying one-half the cost and each contributing an approximately equal amount of space. The court found that from and after 1924 Mr. Lamy and Mrs. Brewster's other predecessors in title had used the driveway for

more than the ten year period prescribed by the statutes of limitation, all the while claiming the right to do so—to the plaintiffs' knowledge—and, therefore the defendant had acquired and established an easement by prescription in that part of the plaintiffs' strip of land occupied by the driveway.

\*     \*     \*     \*     \*     \*

"There is another way of viewing the acts and conduct of the original adjoining owners which is indicative of their intention, initially. Each neighbor furnished an approximately equal amount of space. They built a concrete driveway and a stucco garage and each paid one-half of the expense. Both owners began using the driveway and the garage. Nothing more than the bare facts of what they did appearing, there was an executed contract and such subsequent use of the improvements as the acts and conduct of the parties undoubtedly contemplated. And that use was certainly not permissive only but as of right. \* \* \* 'While the mere permissive use of a way over the land of another will not ripen into an easement, yet one who joins his adjacent landowner in the construction of a paved private way over and along the medial line has given such adjacent owner more than a mere license. Each owner, by use of the driveway, is continuously asserting an adverse right in the portion of the way on the other's lot.' Annotation, 98 A.L.R. loc. cit. 1100. The parties, by their conduct and mutual use of the way, indicate that they intend to create reciprocal easements".

The judgment enjoined interference with the use of the driveway and it was affirmed on appeal.

■ We concur fully with the conclusion of the trial court that the evidence here shows use for more than ten years under claim of right, not under license, and resulted in establishing an easement by prescription. This being so, the judgment should be affirmed unless defendants' plea of res judicata is meritorious and decisive.

■ Case No. 1, upon which defendants' defense of res judicata is bottomed, prayed only for recovery of rent and injunctive relief. It was predicated upon a letter from an attorney purporting to advise that at a future date—June 1, 1963—defendants would close the driveway to plaintiffs. In its memorandum opinion in speaking of Case No. 1, (the same trial judge heard both cases) the court said this:

"The evidence in the first case disclosed that although there had been some dissatisfaction and conversations in regard to the use of the driveway and garage, actually there was no obstruction of the use of the driveway and the plaintiffs and their tenants had free and unlimited access and use of the driveway and garage up to the time of trial".

Cause No. 2 alleged actual closing of the driveway, asked that the barrier be ordered removed, future barrier erection be prohibited and declaration of an easement by prescription. We observe here that title to the real estate itself on which the driveway rests, was not involved in either suit although often in similar cases it is involved, and where it is, is held to make the difference between jurisdiction of this court and jurisdiction of the Supreme Court as involving title to real estate. Cramer v. Jenkins, Mo.Sup., 399 S.W.2d 15, and the mandate transferring this case to us from the Supreme Court, where the appeal originally was lodged.

This court in Whiteley v. Whiteley et al., 325 S.W.2d 502, 505, stated generally the requirements necessary to make properly applicable the doctrine of res judicata:

"In Case v. Sipes, 280 Mo. 110, 120, 217 S.W. 306, 309, the supreme court cited and quoted the following language from Southern Pacific R. Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 27, 42 L.Ed. 355;

'The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.'

"It is stated in State ex rel. Buchanan County v. Patton, 271 Mo. 554, 197 S.W. 353, 354, that the test of res judicata is whether there is an identity of issue; that a 'former judgment is conclusive in a second suit between the same parties where the same legal right as that involved in the former suit comes again in issue, although the second suit is upon a different cause of action.' (citing cases)".

Appellants cite five cases which they say factually are authority for applying res judicata to the case before us. We shall refer briefly to those cases. Whiteley v. Whiteley, supra, was a second garnishment proceeding against an insurance company by a wife on her maintenance judgment against her husband. She had previously lost an identical garnishment, this one being different only in her allegation of fraud. The doctrine was applied.

Case et al. v. Sipes et al., 280 Mo. 110, 217 S.W. 306 is a suit in ejectment. The courts (trial and appellate) held merely that a decision in a prior ejectment suit involving the same parties and the same land, was res judicata as to the later suit. In State ex rel. Buchanan County v. Patton et al., 271 Mo. 554, 197 S.W. 353, the county first sued the circuit clerk for fees which he claimed he was entitled to retain. The clerk had the judgment and it became final. The county

brought suit again, joining the surety on the clerk's official bond. The first action was ruled to bar the second under the res judicata doctrine. Boggiano et al. v. Thielecke, Mo.App., 326 S.W.2d 386, involves attorney fees. Boillot v. Income Guaranty Co., Mo.App., 124 S.W.2d 608, holds that a judgment for a piano tuner, who had lost part of his hand, for total disability indemnities under accident policy was res judicata of piano tuner's disability in all actions for indemnities subsequently accruing under policy by reason of such disability. We are not in disagreement with any of these five cases. None of the five involves an injunction. We do not regard these cases as ruling our case.

■ The issuance of an injunction is a matter of discretion. Our statute, Section 526.010, V.A.M.S. says: "Injunction *may* be granted * * *". We find the following statements in 43 C.J.S. Injunctions:

"Injunctive relief is not a matter of right, but its grant or refusal usually rests in the sound discretion of the court, * * *". § 14, p. 420.

"While an injunction will be granted if irreparable injury is threatened and impending to the rights of complainant, injunction will not issue to allay the mere fears and apprehensions of individuals". § 21, p. 435.

"A court of equity will not afford an injunction to prevent in the future that which in good faith has been discontinued in the absence of any evidence that the acts are likely to be repeated in the future". § 22, p. 445.

The first suit for injunction brought by plaintiffs involved the same roadway and substantially the same parties. Plaintiffs in their petition filed on May 28, 1963, alleged that defendants' attorney had informed them by letter that their driveway would be closed on June 1, 1963, by defendants in

order to do some building thereon. The case was not tried until October 31, 1963. The driveway had never actually been closed. June 1, the day when plaintiffs were afraid it was to be closed, had passed; five more months had passed and apparently there had been not only no interference with use of the driveway, but no further threats of interference. Neither plaintiffs nor defendants asked for a decree quieting title, nor a judgment declaring or denying the existence of an easement by prescription. The trial court in the face of all these circumstances, denied the injunction. Since there had been no actual interference and no impending threat, the trial court exercised its discretion and refused to enjoin.

In Lademan et al. v. Lamb Const. Co. et al., Mo.App., 297 S.W. 187, it was held that an injunction restraining operation of a rock quarry in a residential area should not be granted where operation of the quarry had ceased and there was no impending threat to resume. Under the circumstances the denial of an injunction to restrain operation of the rock quarry surely would not in the future be construed as res judicata so as to prevent issuance of a later injunction restraining operation of the quarry, should its operation be resumed. That is about what did happen in the case before us. The first suit merely held that plaintiffs were not then entitled to an injunction. There was not a ruling that plaintiffs had no easement by prescription or that defendants had a right to block and close the driveway. Those issues were neither raised, considered nor adjudicated. We shall not hold that either party was required to present those issues in that proceeding. Therefore the judgment in the first action is not res judicata as to the present action. To rule that it was, would be holding that issues were there litigated, which were not litigated. The defendants present no additional assignments of error.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion by MAUGHMER, C., is adopted as the opinion of the Court.

HOWARD and BLAIR, JJ., concur.

CROSS, P. J., not participating.