**Boyd A. MEAD and Kathryn H. Mead,
Appellants,**

v.

**Cecil C. THOMAS and Etta Mae Thomas,
Respondents.**

No. 55231.

Supreme Court of Missouri,
Division No. 2.

March 8, 1971.

Williams, Norton & Pollard, Wm. Harrison Norton, North Kansas City, for appellants.

Frank P. Sebree, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, for respondents.

STOCKARD, Commissioner.

Appellants sought to enjoin the respondents from using a driveway constructed over a small portion of their property. By counterclaim respondents sought a decree that they had an easement of way across the property in question by reason of adverse use. The trial court decreed the requested easement, and this appeal followed.

The factual situation is not easy to set forth, but by reproducing herein a portion of Appellants' Exhibit No. 1, and designating thereon the direction of North and placing the letters A, B, C, D and E on the exhibit, a better understanding of the facts can be had.

The circular area shown on the exhibit is the southern end of West Park Drive, where an asphalt street forms a circle, with a grass area in the center and a grass area extending from the outer edge of the asphalt to the outer limits of the area dedicated for street purposes. The letter A indicates the location of the residential lot belonging to appellants, and the line B-C is the boundary line between the properties of appellants and respondents. The area labeled "concrete drive" is a driveway constructed by respondents as hereafter noted. The area labeled "gravel area" is a driveway extending from the northern property line of respondents to the asphalt circular drive of West Park Drive. On each side of the concrete drive is what is labeled a

"brick wall," but which are square brick pillars or columns approximately five and one-half feet in height, each with a "wing" extending about five or six feet away from the driveway. These columns form an attractive gateway. The land of appellants over which the easement was established by the decree of the trial court consists of the triangular portion which we have labeled D-E-C, and which is approximately eleven and one-half feet on the southern side, and approximately two feet on the west side.

Appellants acquired their property in November 1954. According to Mr. Mead, one of the factors in purchasing the property was that it was on a "dead end" street where there would be a minimum of traffic. In December 1955 the property now belonging to respondent was acquired by Mr. and Mrs. Harold Dawes. At that time there was a picket fence where the brick gateway is now located. To the west along the boundary line was a wire strand fence. In the spring of 1957 Mr. Dawes took down the picket fence, constructed the brick gateway, and "as long as he lived there," at least for "a year or two," he drove from his property northward over the triangular parcel of appellants' land to the asphalt street, but, according to Mr. Mead, "with [his] permission." However, respondents introduced in evidence portions of the deposition of Mr. Mead in which he stated that "There never was an agreement to use that drive at all." In answer to the question on deposition whether he gave permission to Mr. Dawes to use the area as a driveway, Mr. Mead said "No Sir," and he gave the same answer to the question as to whether Mr. Dawes had ever talked to him about using the area as an access road to his property. He further stated that Mr. Dawes "would go in there and out temporarily while he was building houses," and that he never forbade him to use it.

Respondents purchased the Dawes property in July 1959, and immediately started using the driveway as an access to and

egress from their property. Mr. Mead testified that shortly after the respondents moved in he told Mr. Thomas that he did not want the area used as a "thoroughfare," and that respondents should stop using it, but that they did not do so. Mr. Thomas agreed that Mr. Mead told him that he did not want a "thoroughfare" there, but he denied that he was told not to use it. He testified that he understood Mr. Mead to mean that it was not to be a thoroughfare for use of the public generally, and as to that he agreed. In 1967 at a cost of more than $1,000 respondents constructed a concrete driveway from their driveway, which went to North Grand in front of their house, northward through the gateway to their property line. Respondents also placed their mailbox on the outer grass area of the circular drive of West Park Drive, and apparently received their mail at that place. Mr. Thomas testified that he did not know that he crossed appellants' land when he went from his property to West Park Drive, but he believed he had a right to do so on the basis that he went directly from his property onto the public area for street purposes.

It appears that there would have been no trouble concerning the use of the driveway but for a dispute concerning the construction of a sewer by respondents. The complete circumstances are not revealed in the record, but it appears that respondents constructed a sewer from his property to a public sewer, and in doing so crossed appellants' back yard, or a portion of it. Mr. Thomas admitted that the contractor did not do "a sufficient job" in repairing the damage and in backfilling, and that although he had talked to the contractor about it he had not been able to get anything done. Mr. Mead admitted that "the sewer question brought the whole thing to a head."

Appellants state in their brief that "for the sake of argument" they admit that respondents' use and possession of the driveway was adverse, and it was so found by the trial court. From our review of the

evidence it seems clear that respondents' use of the driveway across the triangular strip belonging to appellants was open, continuous, visible and uninterrupted for a period of approximately eight years and nine months. We agree with the finding of the trial court that respondents' use was adverse.

The essential question is whether the use of the triangular strip by Mr. and Mrs. Dawes was adverse. Appellants do not contend that if the use by Mr. and Mrs. Dawes be found to be adverse that their use cannot be added to the use by respondents to constitute adverse use for the statutory period of ten years.

██ ██ There is no dispute between the parties concerning the legal principles applicable to this case. Generally stated, to establish an easement of way over the land of another by prescription, the use must be open and notorious, adverse under a claim of right, continuous and uninterrupted, and for the full prescriptive period. Zinser v. Lucks, 361 Mo. 671, 235 S.W.2d 844, 848; Riggs v. City of Springfield, 344 Mo. 420, 126 S.W.2d 1144, 122 A.L.R. 1496; 28 C. J.S. Easements § 18. Conversely it is held that permissive use, or use by a license, may not constitute adverse use. Bollinger v. Henry, Mo., 375 S.W.2d 161; Jacobs v. Brewster, 354 Mo. 729, 190 S.W.2d 894.

██ The evidence in this case clearly shows that the use by Mr. Dawes was open, notorious, continuous and uninterrupted. The use was daily, and it occurred immediately in front of appellants' house and only a few feet distant. The intent by Mr. and Mrs. Dawes to make a continued and permanent use was evidenced by the construction of the brick gateway, and such an intent on the part of respondents was evidenced by the expenditure of over $1,000 to construct a concrete driveway to the property line. Both of these projects were constructed with no objection by appellants, and they admit that they never objected to the use by Mr. Dawes.

It has repeatedly been held that when one claims an easement by prescription and shows an open, continuous, visible and uninterrupted use for the prescribed period, as respondents have done in this case, the burden is upon the landowner to present evidence to show that the use was permissive, rather than adverse, if he claims it to have been so. Mueller v. Larison, Mo., 355 S.W.2d 5, 9; Jacobs v. Brewster, supra.

We consider the surrounding circumstances in this case to indicate a nonpermissive use. The only evidence to the contrary was the testimony at trial of appellants. Mr. Mead's testimony amounted to little more than the statement of the conclusion that the use of the driveway by Mr. Dawes, and also by respondents, was with his permission. He did not elaborate on facts or circumstances which would demonstrate a permissive use. However, on cross-examination he qualified his testimony somewhat by admitting that his memory could be "entirely wrong." This came about when it was brought out that prior to trial in a deposition he had unequivocally stated that he never gave Mr. Dawes permission to use the driveway. At time of trial Mr. Dawes was deceased. Mrs. Dawes testified by deposition, and she stated that she did not request permission from appellants, that her husband tore down the fence, and in 1957 built the brick gateway, and then built the gravel driveway from their back yard to the circle in West Park Drive, and that no objection was made by appellants. She also testified that Mr. Dawes used the driveway to go to and from his property several times each day.

Mrs. Mead testified to a conversation between Mr. Mead and Mr. Dawes at which time Mr. Dawes asked permission to use the driveway. Mr. Mead did not expressly refer to this conversation, at least so it could be identified, and the time of its occurrence, according to Mrs. Mead, was over a year after the time when Mr. Dawes admittedly started using the drive-

way and after he had constructed the brick gateway and the gravel driveway.

This case was tried before the court, and it expressly found the use by Mr. Dawes and by respondents to have been adverse, and for the full prescriptive period. There admittedly is a conflict in the evidence. In a case tried as this one, the "appellate court shall review the case upon both the law and the evidence," Civil Rule 73.01 (d), V.A.M.R., and in doing so the court reviews the record de novo, determines the credibility, weight and value of the testimony and evidence, and arrives at its own conclusions. Pitts v. Garner, Mo., 321 S. W.2d 509. However, when there is a conflict in the testimony, as there is in this case, in performing our appellate function we necessarily and properly must give due deference to the trial court's opportunity to see and hear the witnesses, and we should not set aside the judgment of the trial court unless it is clearly erroneous. Schmitt v. Pierce, Mo., 344 S.W.2d 120.

From our independent review of the evidence, as herein set out, and after we give due deference to the opportunity of the trial court to observe the witnesses and evaluate their testimony in the light of the total circumstances, we are constrained to conclude not only that the judgment of the trial court is not clearly erroneous, but that we agree with the court's findings and conclusions.

The judgment is affirmed.

BARRETT, C., did not sit.

PRITCHARD, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.