UNITED STATES of America, Plaintiff,

v.

**43.12 ACRES OF LAND, MORE OR LESS, SITUATE IN HENRY COUNTY, STATE OF MISSOURI; and Akers Ranch, Inc., et al., Defendants.**

No. 79–5053–CV–SW–1.

United States District Court,
W.D. Missouri,
Southwestern Division.

Jan. 11, 1983.

---

Vernon A. Poschel, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Julius F. Wall, Poague, Wall, Eshelman & Cox, Clinton, Mo., for defendants.

## MEMORANDUM AND ORDER ISSUING PRETRIAL RULING

JOHN W. OLIVER, Senior District Judge.

This condemnation case pends on plaintiff's September 22, 1982 motion for a pretrial ruling as to whether defendants have acquired legal access over a haul road on the land abutting the parent tract. Pursuant to this Court's Orders of October 6, 1982 and November 12, 1982, the parties have conferred and drafted a stipulation of all undisputed facts. The parties have done a commendable job of drafting this stipulation and, consequently, the pretrial question can now be ruled without the necessity of a hearing. A brief recitation of the stipulated facts is necessary to put the legal question presented in proper focus.

### I. *Stipulated Facts*

The parent tract (Akers property) was purchased by H.R. Akers and his wife Cleo Marie Akers in March, 1943. On December 30, 1974 it was acquired by deed by Akers Ranch, Inc. On July 30, 1979 the United States of America acquired the property, taking the Akers' land pursuant to the power of eminent domain. The abutting tract (Devine property) was acquired by Clifford C. Devine in 1932. On September 12, 1951 Devine died intestate and his heirs acquired the property and owned it from 1951 until 1979. On August 28, 1979 the Devine land was purchased by the United States of America.

From 1943 until the date of taking, H.R. Akers used a haul road on the Devine property for ingress and egress from his north property line to the county road. During the entire period from 1943 to 1979, the Akers transported equipment, livestock, fertilizer, feed, and personal vehicles over the Devine road in order to inspect livestock and manage their farm situated on the Akers property.

Under a lease with Clifford C. Devine or his heirs, one A.M. Davis operated a quarry on the Devine property from 1942 until March 26, 1975. And under a lease with Akers, Davis operated a quarry on the Akers property from January 1, 1952 until December 20, 1974. When Davis mined rock on the Akers property, he processed it with equipment on the Devine property and hauled it over the road in question. Thus, Davis, during the time he operated his quarry on the Akers property, mined rock from both the Akers and Devine properties and used the haul road as part of his operation.

On March 26, 1975 Davis entered into a sublease with Max D. Fincher for the production of limestone on the Devine property. On December 20, 1974, the Akers entered into a lease with Hilty Quarries, Inc. and Ozark Sand Co., Inc. (Hilty) for the purpose of removing limestone from the Akers property. Thus, from December 20, 1974 until the date of taking, the Akers and Devine properties were mined by separate tenants. The defendants Akers Ranch, Inc., H.R. Akers and Cleo Akers have never personally operated a limestone mine or quarry or hauled limestone over the road in question, but they did haul farm materials and equipment during this period. The lessees and tenants of the Akers, however, did haul limestone products over the road from the Akers property from 1952 until 1979. (Davis from 1952 until 1974, and Hilty from 1974 until 1979.) Further, the only improvements to the road were made by Davis and Hilty in order to make the road capable of supporting heavy trucks for the hauling of limestone products.

## II. *Discussion*

■ Defendants contend that, under Missouri law, these facts are sufficient to establish that they have acquired a prescriptive easement over the haul road on the Devine property for agricultural and quarry purposes. In Missouri, to establish an easement of way over the land of another by prescription, the party claiming the easement has the burden of proving that the use was open and notorious, adverse under a claim of right, continuous and uninterrupted, and for the full prescriptive period of ten years. *Mead v. Thomas,* 464 S.W.2d 1, 4 (Mo.1971). But once the claiming party establishes that the use was open, notorious, continuous, and uninterrupted for the ten year period, a presumption is raised that the use was adverse and under a claim of right; the burden then shifts to the servient owner to show that the use was permissive or by virtue of some license, indulgence, or agreement, inconsistent with the prescriptive right claimed. *Benson v. Fekete,* 424 S.W.2d 729, 738 (Mo.1968); *George v. Dickinson,* 504 S.W.2d 658, 663 (Mo.App. 1974); *McDougall v. Castelli,* 501 S.W.2d 855, 858 (Mo.App.1973).

■ The claimant also bears the burden of establishing the proper character and extent of the easement. "[W]hen a way is claimed by prescription, the character and extent of it is fixed by the use under which it is gained." *Riggs v. City of Springfield,* 344 Mo. 420, 126 S.W.2d 1144, 1149 (1939). A prescriptive easement establishes only a qualified right for a particular purpose. Moreover, any material change in its use during the prescriptive period interrupts and may prevent the acquisition of the right. *Riggs v. City of Springfield, supra,* 126 S.W.2d at 1149. *See also Holian v. Guenther,* 471 S.W.2d 457, 459 (Mo.1971) and *Henderson v. La Capra,* 307 S.W.2d 59, 63 (Mo.App.1957).

■ This case is somewhat complicated by the fact that the haul road in question was used by three different parties over the relevant period for two distinct uses. The Akers used the roadway during the whole period from 1943 to 1979 for agricultural

purposes. Davis and Hilty used the roadway for quarry purposes, successively, from 1952–1979. Further complicating the analysis is the fact that during the entire period in which Davis used the roadway to haul rock products from the Akers property, he was a tenant of both Akers and Devine. For reasons discussed below, we conclude that the Akers have established an easement for agricultural purposes only.

The Akers' use, standing alone, is sufficient to establish a prescriptive easement for agricultural purposes. This is so because the Akers used the Devine road to haul agricultural materials and equipment to and from the Akers property across the Devine land, and such use was open, notorious, continuous and uninterrupted for longer than a ten year period, thus raising a presumption that the use was adverse and under a claim of right. Plaintiff has not claimed or attempted to prove that this use by Akers for agricultural purposes was permissive or by virtue of some license, indulgence, or agreement inconsistent with the prescriptive right; thus an easement for agricultural purposes has been established. But the defendants claim they have in addition acquired a prescriptive easement for quarry purposes since their tenants, Davis and Hilty, used the roadway for mining operation in addition to and concurrently with the Akers' agricultural use.

■ Defendants contend that the use by Davis as tenant of the Akers from 1952 to 1974 inures to the benefit of the landlord and therefore the Akers have established an easement for quarry purposes. Plaintiff contends that Davis, as tenant of Devine during this period, had permission to use the road.[1] It is well established under Missouri law that a tenant's use inures solely to the benefit of the landlord and such use would thus support the landlord's acquisition of an easement by prescription. *Benson v. Fekete, supra,* 424 S.W.2d at 741;

*Jacobs v. Brewster,* 354 Mo. 729, 190 S.W.2d 894, 898 (1945).

■ In the present case, however, Davis was the tenant of both Akers and Devine. A tenant's use of the servient estate cannot be used to establish an easement against the servient owner. *Benson v. Fekete, supra,* 424 S.W.2d at 741; *Vossen v. Dautel,* 116 Mo. 379, 22 S.W. 734, 736 (1893); *McIlroy v. Hamilton,* 539 S.W.2d 669, 675 (Mo.App.1976); *Guerin v. Yocum,* 506 S.W.2d 46, 48 (Mo.App.1974). In the *Guerin* case, for example, the owner of the dominant estate was, for a period of years, also the tenant of the servient estate. The Court stated that those years could not be used to establish a prescriptive easement because the use of a roadway by a tenant cannot be used to establish an easement against his landlord. This was so even though the tenant of the servient owner was also the dominant owner. Therefore, in the present case, Davis, as tenant of the Devine property, could not establish a prescriptive easement over the Devine road for the benefit of Akers.

■ Plaintiff also contends that the use by the Akers was not continuous and that therefore the Akers have established no easement at all. The plaintiff apparently argues that the use by Davis of the Akers property, commencing in 1952, effected such a material change in the Akers' use that it interrupted and thus prevented the Akers from acquiring any easement at all. In 1952 Akers had been using the haul road for agricultural purposes for less than nine years and had thus not yet established a prescriptive easement for that purpose. We conclude that the use by Davis did not interrupt Akers' prescriptive period. Just as Davis as a tenant of Devine cannot establish a prescriptive right inuring to the benefit of Akers, under the facts of this case, Davis' use of the haul road cannot be

1. Plaintiff argues that permission may be inferred from a 1965 lease between Davis and the Devine heirs. The parties agree that this 1965 lease is the only "available" lease between Davis and Devine or his heirs. We need not determine the questions surrounding the language of the lease or the absence of any earlier lease. This pretrial ruling is not based on the specific terms of any lease.

said to have interrupted the acquisition of Akers' prescriptive easement.[2]

Akers' second tenant, Hilty, had a lease with Akers from 1974 to 1979 for the purpose of mining rock on the Akers property. Hilty hauled the rock over the Devine road during this period though Hilty was not a tenant of Devine and had no permission from Devine to use the road. Thus, Hilty's use was open, notorious, continuous, uninterrupted, and adverse under a claim of right. This use was not, however, for the necessary ten year period and therefore can not, standing alone, establish a prescriptive easement for quarry purposes. Nor can the use by Hilty be said to expand the rights of the Akers. The character and extent of prescriptive rights are fixed and determined by the use under which they were gained. Once the character is fixed, neither the dominant owner nor the servient owner can materially alter the character of the easement. *Cheatham v. Melton,* 593 S.W.2d 900, 904 (Mo.App.1980); *Gerber v. Appel,* 164 S.W.2d 225, 228 (Mo.App. 1942). In this case, the defendants established a prescriptive right limited to agricultural purposes. Hauling rock products is of a significantly different character than agricultural use and we therefore conclude that defendants' prescriptive easement cannot, under the facts presented, be expanded to include quarry purposes.

### III.

For the reasons stated, it is

ORDERED that the Land Condemnation Commission is directed in accordance with the following pretrial ruling: the defendants have acquired a prescriptive easement over the haul road on the Devine property for agricultural purposes only and not for quarry purposes.

---

2. Plaintiff also suggests that the use by Davis destroyed Akers' prescriptive rights because the use was not exclusive. It is true that in order to acquire a prescriptive easement the use must be exclusive but this exclusivity does not mean that tenants of the dominant estate or servient estate can not use the road. The adverse use must be exclusive in the sense that the claim of right is particular to the claimant as opposed to arising simply as a member of the general public. *Cramer v. Jenkins,* 399 S.W.2d 15, 18 (Mo.1966).